**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: DUDLEY M. MOORHOUS, JR.,
<u>Debtor.</u>

EARL DORFMAN; SHARON DORFMAN,
<u>Plaintiffs-Appellants,</u>                                          <u>No. 95-2552</u>

v.

DUDLEY M. MOORHOUS, JR.;
DOROTHY MOORHOUS,
<u>Defendants-Appellees.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, District Judge.
(CA-95-529-A, BK-94-10003-AA)

Argued: February 2, 1996

Decided: March 5, 1997

Before WIDENER, WILKINS, and MICHAEL, Circuit Judges.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Wilkins and Judge Michael concur.

_____

**COUNSEL**

**ARGUED:** Joel S. Luber, CAPLAN & LUBER, Paoli, Pennsylvania,
for Appellants. Alan Miles Winterhalter, ALAN M. WINTER-
HALTER & ASSOCIATES, P.C., McLean, Virginia, for Appellees.

**OPINION**

WIDENER, Circuit Judge:

Plaintiffs Earl and Sharon Dorfman, husband and wife, appeal from an order of the district court affirming the memorandum and order of the bankruptcy court published as In re Moorhous , 180 B.R. 138 (Bankr. E.D. Va. 1995). Defendants are Dudley M. Moorhous, the debtor and a retired Air Force colonel, and Dorothy Moorhous, his wife.[1] The bankruptcy court held that a series of agreements purporting to assign a number of installments of Col. Moorhous's military retirement pay in exchange for lump sum advances from the Dorfmans were "not effective to vest ownership of such pay in the Dorfmans." 180 B.R. at 150. As a result, the court also held that no basis had been shown to impose a constructive trust on Col. Moorhous' retired pay, denied injunctive relief, and held that Col. Moorhous did not become liable for conversion when he ceased to remit his retired pay to the Dorfmans. 180 B.R. at 151-52. In an earlier order granting summary judgment in favor of the Moorhouses on plaintiffs' claim for breach of contract, the bankruptcy court held that any contractual liability under the agreement had been discharged in bankruptcy, 180 B.R. at 152.

We affirm.

The parties accept, as do we, the statement of facts set forth in the bankruptcy court's published opinion.

The facts show that Col. Moorhous sought money for investment purposes and consequently placed an ad in the November 17, 1989 edition of a national newspaper that read as follows:

> WILL PAY 17% ANNUALLY!
>
> For $190,000 for 15 years, paying $3,250/mo from government retirement.

_____

[1] Plaintiffs' complaint initially named the United States Air Force as an additional defendant. They voluntarily dismissed this claim. 180 B.R. at 152.

The Dorfmans, who reside in Pennsylvania, responded to the ad, and after a period of negotiations with Col. Moorhous in Virginia, obtained the services of an attorney. Col. Moorhous did not engage counsel.

The transaction, as Col. Moorhous proposed it, involved the "exchange of his right to the proceeds of his vested pension" for a specified period of months in return for a lump sum cash payment. 180 B.R. at 145 n.4. The attorney doubted whether an assignment of the right to military retired pay could be enforced and made written inquiry to the Headquarters Air Force Accounting and Finance Center (AFAFC) in March, 1990. His letter described the proposed transaction as the "advance [of] a certain sum of money to [Col. Moorhous] in exchange for his irrevocable assignment of a certain fixed number of future pension payments," and asked the following questions about the nature of the right to retired pay and the legality of the proposed arrangement:

> 3. Whether there is any law, regulation, ruling, or other authority which would prohibit Mr. Moorhous from entering into the type of transaction described above. (A proposed form of agreement incorporating the deal is enclosed).
>
> 4. Whether you will honor a direction by Mr. Moorhous to make direct deposits of his pension into a bank account designated by our client (not in the name of Mr. Moorhous). Please forward the appropriate forms to accomplish same (Form #1199A?).
>
> 5. Will you accept an irrevocable designation of direct deposit for a stated period of time, or one revocable only upon signed co-authorization by our client.
>
> . . . .
>
> 7. Under what circumstances, if any, could Mr. Moorhous' retirement pay be terminated, suspended, reduced in amount, or otherwise impacted by his acts alone, or by actions outside his control. For example - divorce, judgment creditors, bankruptcy, Act of Congress.

3

Letter from Luber to AFAFC of March 8, 1990. Before a written reply was received, the attorney learned by telephone from personnel at AFAFC that "the Air Force would only disburse retired pay to the retired member or by direct deposit to an account in the retired member's name." 180 B.R. at 142.

Despite the verbal refusal of the Air Force to recognize a right of payment in anyone but Col. Moorhous, Luber drafted an agreement circumventing the bank account restrictions and purporting to transfer the right without waiting for a written reply to his inquiry. The parties executed the agreement on April 18, 1990. The Air Force replied in writing on April 24, 1990, confirming that the right to retired pay could not be transferred:

> c. Question 3. Retired pay is not a vested pension. It is a statutory right governed by law enacted by congressional legislation. Retired pay can be disbursed only to the Air Force retiree. The disbursement of funds after receipt by the retiree is at his discretion.
>
> d. Question 4 and 5. Direct deposits to a financial institution can be made in Colonel Moorhous' name only and must be at his request. He and the financial institution must complete a Standard Form 1199A and send it to AFAFC.
>
> . . . .
>
> f. Question 7. Retired pay terminates upon the retiree's death. However, it may be waived in full or partially in lieu of Department of Veterans Affairs (VA) compensation or civil service retirement. It may be reduced partially or in full by dual compensation or pay cap offsets if he should be employed by the Federal Government. An act of Congress may also stop or change retired pay, and the retiree's pay may be garnished for debts owed to the U.S. government or by court order for various reasons.

Letter from AFAFC to Luber of 4/24/90.

4

Under the agreement drafted by the attorney and executed April 18, 1990, the Dorfmans paid $125,000 in exchange for an irrevocable assignment of 112 1/2 consecutive monthly payments of Col. Moorhous's retired pay. We are told by the Dorfmans at oral argument that the first money was paid to Col. Moorhous on April 18-20, 1990. The agreement circumvented the Air Force's direct deposit restrictions by requiring Col. Moorhous to establish an account at a Pennsylvania bank, issue orders purporting to be irrevocable to the Air Force to deposit his retired pay into that account, and give irrevocable authorization to the bank to transfer the payment into an account in the Dorfmans' name each month. The Dorfmans required as security a first mortgage on two lots in St. John's County, Florida; a third deed of trust on the Moorhous's home in Springfield, Virginia; a collateral assignment of a $250,000 life insurance policy on Col. Moorhous's life; and a pledge of the corporate stock Col. Moorhous purchased with the proceeds of the Dorfmans' advance. The decision of the bankruptcy court did not disturb this security, and it is not an issue on appeal.

Subsequent loans by the Dorfmans and a bill from the attorney resulted in amendments to the agreement that increased the number of installments of retired pay assigned by Moorhous.

The arrangement functioned for some months, from May 1990 through October 1993, during which time the bankruptcy court estimated that the Dorfmans received in excess of $137,981. In October 1993, Col. Moorhous, experiencing financial difficulties, submitted a new direct deposit form to the Air Force, directing that his retired pay be deposited in a Virginia Bank. The Dorfmans filed suit in the United States District Court for the Eastern District of Pennsylvania the following month. In January, 1994, Col. Moorhous filed a chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Virginia, which stayed the Dorfmans' suit in Pennsylvania. Col. Moorhous received a discharge on April 22, 1994. The Dorfmans obtained a confessed judgment against Mrs. Moorhous who then filed her own chapter 7 petition in October, 1994 and received a discharge on January 31, 1995.

The Dorfmans filed this action as an adversary proceeding on April 12, 1994, seeking a declaratory judgment that Col. Moorhous

5

breached the agreement; an injunction to require him to repay the installments of retired pay missed since November, 1993 and reinstate the direct deposit to the Pennsylvania bank; damages for breach of contract and conversion; and the imposition of a constructive trust upon the retired pay received by the Moorhouses after October 31, 1993. The bankruptcy court granted summary judgment for the Moorhouses on the breach of contract claim on the grounds that any liability for breach had been discharged in bankruptcy. Following a two day trial, the court entered judgment for the Moorhouses on all remaining counts.

The principal question presented in this appeal is whether the agreement constituted a valid assignment of an interest in property that could be enforced, post-petition, against the Moorhouses. In its opinion, the bankruptcy court accepted the parties' characterization of the transaction at the time the agreement was entered into as an annuity rather than a loan, which bankruptcy would clearly discharge, on the grounds that Col. Moorhous knew that the Dorfmans, following the attorney's advice would not have entered into a transaction structured as a loan. The court reasoned, however, that if retired pay was compensation for the retiree's current - though reduced - military service, the assignment would not survive the filing of the bankruptcy petition. The court was reluctant to base its holding on this rationale in light of the principle, announced by the Supreme Court in Barker v. Kansas, 503 U.S. 594 (1992), that for state tax purposes under a federal statute that waives intergovernmental tax immunity, military retirement benefits are considered deferred pay for past services rather than current pay. See Barker, 503 U.S. at 605.

Instead, the court looked to 37 U.S.C. § 701, which provides in pertinent part:

> (a) Under regulations prescribed by the Secretary of the military department concerned, a commissioned officer of the Army, Navy, Air Force, or Marine Corps may transfer or assign his pay account, when due and payable.
>
> . . . .

6

(c) An enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void.

(d) The Secretary of the military department concerned, may allow a-

(1) member of the Army, Navy, Air Force, or Marine Corps . . . .

to make allotments of his pay for the support of his relatives, or for any other purpose that the Secretary concerned considers proper . . . .

37 U.S.C. § 701. Contrasting the statute's use of the permissive word "may" with respect to officer pay assignments with § 701(c)'s absolute prohibition of pay assignments by enlisted men, the bankruptcy court concluded that Congress "intended to require an implementing regulation by the Secretary of the service concerned as a precondition to assignments of pay by officers." 180 B.R. at 150.

The parties agreed that the Secretary of the Air Force had never issued regulations addressing assignments of pay. After examining the current regulations concerning both active duty and retired pay for all services, the Department of Defense Financial Management Regulation (DoDFMR),[2] the court noted that the only means allowed for the payment of debts by retirees are allotments, see 37 U.S.C. § 701(d), which the retiree may terminate at any time. Further, authorized allotments were restricted to a limited class of creditors that did not include the Dorfmans. The court thus concluded that the Secretary of Defense also had not issued regulations permitting the assignment

_____

[2] The regulations examined by the bankruptcy court are divided into two volumes. Volume 7A, dated December 12, 1994, and entitled "Military Pay Policy and Procedures Active Duty and Reserve Pay" deals with active duty and reserve pay. Volume 7B, dated November 30, 1992, and entitled "Department of Defense Military Retired Pay Manual" applies to retired pay. Although effective after the date of the transaction here questioned, Vol. 7B contains no regulation authorizing assignment of retired pay.

7

of an officer's retired pay and held that the "attempted assignment by Col. Moorhous of his military retired pay was not effective to vest ownership of such pay in the Dorfmans." 180 B.R. at 150.

The court held that the provision "when due and payable" in § 701(a) was most reasonably construed to mean"that Congress intended to permit assignments only of pay that is due and payable at the time the assignment is made," 180 B.R. at 150, noting that other circuits had adopted that construction. See United States v. Smith, 393 F.2d 318 (5th Cir. 1968); Smith v. Commanding Officer, 555 F.2d 234, 235 n.1 (9th Cir. 1977). The bankruptcy court's denial of a constructive trust, injunctive relief, and damages for conversion followed directly from its conclusion that the purported assignment had not actually transferred any property right to the Dorfmans.

The Dorfmans present a number of arguments to show that the assignment was valid, only two of which merit consideration. First, they contend it was error to construe the statute's due and payable provision to limit assignments only to pay that is due and payable at the time the assignment is made. Pointing to the fact that retired pay is disbursed by electronic funds transfer shortly after the end of the month during which the pay is earned and becomes due, the Dorfmans argue that the limitation "is an absurd reading of the statute, and essentially renders the statute a nullity." Second, they contend that 37 U.S.C. § 701(a) authorizes officers to assign their pay without requiring the service secretary to promulgate an implementing regulation, and that any regulation that prohibits this statutory right is invalid.

Turning first to the construction of the words "due and payable," we agree with the Fifth Circuit and the bankruptcy court that "no serviceman may assign his pay in advance of the date it becomes due and payable." United States v. Smith, 393 F.2d at 321. The limitation is but a corollary of general legal principles governing the pay of public officials:

> [I]t is a well settled general rule that an assignment by a public officer of the unearned salary, wages, or fees of his office is void as against public policy . . . . In accordance with the general rule, and also in view of statutes and regulations forbidding an officer to assign his pay account before

8

due, an army or navy officer cannot assign his unearned pay, including the unearned half pay of a retired officer.

6A C.J.S. Assignments § 26 (1975) at 623-25 (citing cases). The public policy justification arises from the concern that unforeseen financial embarrassments, following the assignment of an officer's future pay, may prevent the officer from rendering the services for which he has been retained. 6A C.J.S. Assignments§ 26 (1975) at 624; Swenck v. Wyckoff, 20 A. 259, 260 (N.J. 1890)(officer may not assign unearned retired pay). The restriction is of long standing in English jurisprudence, Swenck, 20 A. at 260, and with respect to American forces, has existed since at least 1835, at which time Army Regulations stated "[o]fficers shall not pass away or transfer their pay-accounts for any amount not actually due at the time." Army Regulations of 1835, Reg. 11 Art. XLVIII (quoted in  15 Op. Att'y. Gen. 271, 273 (1877).

Also, as Smith points out, at p.321, under the Anti-Assignment Act, 31 U.S.C. § 3727, an officer's assignment of his future pay is invalid in the form present here. This conclusion is consistent with the due and payable restriction in 37 U.S.C. § 701(a). Section 3727(b) authorizes the assignment of a claim against the United States, such as an officer's pay account, "only after [the] claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727(b). None of these conditions was met in the present case.

The predecessor statute to current § 701(a) was 10 U.S.C. § 891, enacted March 2, 1907, the substantive provision of which is, in essence, not different from § 701(a).

> All commissioned officers of the Army may transfer or assign their pay accounts, when due and payable, under such regulations and restrictions as the Secretary of War may prescribe.

10 U.S.C. 891.

Not only the Army Regulations of 1835 referred to above, but according to the opinion of the attorney general in which they are

9

quoted, subsequent Army regulations of 1841, 1857, and 1863 repromulgated these procedures. Op. Att'y. Gen. at 273.

Briefly, since 1907, under a statute, when 10 U.S.C.§ 891 was enacted, and at least as far back as 1835, absent a statute, no statute or regulation of any of the armed forces has authorized the assignment of any officer's pay before it is due and payable. The advice which the Dorfmans' attorney received from the Air Force at the very beginning of this transaction, well before any money was advanced, was consistent with this position. We are thus of opinion that the attempted assignment of the retired pay of Col. Moorhous was invalid.

In view of our holding that the bankruptcy court did not err in concluding that the purported assignment of Col. Moorhous's retired pay did not vest ownership of that pay in the Dorfmans, we affirm the denial of a constructive trust, injunctive relief, and damages for conversion[3] for the reasons sufficiently stated in the opinion of the bankruptcy court.

The judgment of the district court is

AFFIRMED.

_____

[3] The bankruptcy court found that any claims of the Dorfmans for conversion regarding military pay received by Col. Moorhous prior to filing for bankruptcy was not timely filed. The court noted that Fed.R.Bankr.P. 4007(c) required the Dorfmans to file a complaint as to the dischargeability of such a debt by April 5, 1994, and, because no complaint was filed until April 12, 1994, any claim they had for damages as a result of Col. Moorhous' failure to pay out the pension was discharged. 180 B.R. at 152. Even if we construe the Dorfman's brief as contesting this decision on appeal, we affirm on the basis of the bankruptcy court's opinion.