**In re Leslie Eugene Lee BOWDEN, Debtor.**

**Leslie Eugene Bowden, Plaintiff,**

**v.**

**Structured Investments Co. LLC, a foreign corporation doing business in Washington, Defendant.**

**Bankruptcy No. 03–40575.
Adversary No. 03–4178.**

United States Bankruptcy Court,
W.D. Washington.

Aug. 27, 2004.

Dorothy A. Bartholomew, Fife, WA, for plaintiff.

Robert L. Beale, Tacoma, WA, for defendant.

David M. Howe, Chapter 13 Trustee.

## CORRECTED DECISION ON SUMMARY JUDGMENT and CLAIM OBJECTION

PHILIP H. BRANDT, Chief Judge.

This is an adversary proceeding to determine the secured status of the claim Structured Investments Co. LLC ("SICO") filed in debtor Leslie Bowden's chapter 13 case. I have for decision cross-motions for summary judgment: plaintiff for a declaration that SICO's claim is unsecured, and defendant for a declaration that the parties' agreement created an express trust. Bowden also filed an objection to SICO's claim as untimely, which was consolidated with the adversary proceeding.

For the reasons set forth below, I will GRANT plaintiff's motion for summary judgment, DENY defendant's cross-motion, and SUSTAIN the objection.

## I. FACTS

The facts are undisputed. Early in 2001, Bowden, a retired Navy enlisted man, was experiencing financial difficulties. He responded to SICO's local newspaper advertisement offering lump sum cash payments in exchange for pledges of future military benefits, and on 23 May 2001 entered into an "Annuity Utilization Agreement" (the "Agreement") with SICO. The Agreement provides that Bowden, who is entitled to monthly Navy retirement pay of $580, and a Veterans Affairs ("VA") monthly disability benefit of $201, would receive a lump sum payment of $25,864 in exchange for an agreement to remit to SICO 96 monthly combined benefits payments of $762.

The Agreement allowed SICO to open a bank account into which the combined benefits would be directly deposited, and gave SICO power of attorney to instruct the payor (the Defense Finance Accounting Service: "DFAS") to deposit in that account and allowed SICO to withdraw the funds. The Agreement prevented Bowden from withdrawing any funds without a SICO representative's signature. He was never informed of the bank's name, location, or account number.

The Agreement purports to grant SICO a perfected first priority security interest in the bank account, but SICO does not identify any means of perfection. The Agreement expressly states that it is not a loan contract, and that it does not give SICO a security interest in Bowden's benefits, which, under federal law, are not assignable.

Although Bowden intended to repay the loan, his work hours were cut and his hourly wage reduced. Bowden requested that DFAS cancel the SICO allotment. When he failed to receive his next retirement and disability payments, he contacted DFAS, which told Bowden that the allotment had been reinstated. At Bowden's request, DFAS again cancelled the allotment and noted his file to preclude reinstatement without Bowden's permission.

Thereafter, Bowden filed a petition for

chapter 13 [1] relief, scheduling an unsecured debt to SICO of $26,000. His plan is a 36–month best efforts plan, which was confirmed without objection on 10 April 2003. Unsecured creditors are projected to receive nothing on their claims, regardless of whether SICO's claim is included.

SICO was sent timely notice of the claims bar date (28 May 2003), but did not file its secured proof of claim for $84,562 until 11 June 2003. Bowden filed an adversary proceeding seeking a determination that SICO's claim to his future retirement pay and disability benefits is unsecured, and then an objection to the claim as untimely. SICO answered, asserting that the Agreement was a declaration of trust. Respecting the timeliness objection, SICO responded that Bowden's scheduling of its claim was an informal proof of claim, which its proof of claim merely amended.

## II. JURISDICTION

This court has jurisdiction under 28 U.S.C. § 157(b)(2)(B) and (O) and GR 7, W.D. Wash.

## III. ISSUES

1. Is SICO's claim time-barred?

2. Was the Agreement an effective declaration of trust, removing debtor's military retirement pay and disability benefits from the estate, and precluding termination except in accordance with its terms?

## IV. DISCUSSION

The parties agree that the issues are purely legal, appropriate for resolution by summary judgment. Rule 7056.

### A. *Late Claim*

Under § 502(b)(9), an untimely creditor's claim must be disallowed if it is objected to. *In re Gardenhire*, 209 F.3d 1145, 1147 (9th Cir.2000). As noted, SICO's claim was filed after the bar date, and debtor has objected to the claim as late-filed.

Regardless of whether a claim is secured or unsecured, a proof of claim must be filed for the claim to receive a distribution through a chapter 13 plan. *In re Avery*, 272 B.R. 718, 724 n. 5 (Bankr. E.D.Cal.2002); *In re Alderman*, 150 B.R. 246, 252 (Bankr.D.Mont.1993). A claim disallowed under § 502 is generally discharged in a chapter 13. *Gardenhire*, 209 F.3d at 1147.

SICO argues that the debtor's scheduling of its claim was an informal proof of claim, and the proof of claim it filed was an amendment thereto. In support, SICO cites *In re Holm*, 931 F.2d 620 (9th Cir.1991). There, following the "so-called rule of liberality in amendments" to proofs of claim, the Circuit held that a disclosure statement filed by a judgment creditor was an informal proof of claim amendable after the bar date. To constitute an informal proof of claim, a document "must state an explicit demand showing the nature and amount of the claim against the estate, and evidence an intent to hold the debtor liable." *Id.* at 622 (citation omitted).

The parties have not cited any Ninth Circuit authority holding that a debtor's schedules suffice as an informal proof of claim. Bankruptcy courts in the Fourth Circuit, which follows a standard similar to the Ninth, have held that listing a debt in the debtor's schedules, standing alone, is

---

1. Absent contrary indication, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "FRCP" references, to the Federal Rules of Civil Procedure.

not an informal proof of claim. *See In re Faust,* 180 B.R. 432, 434–35 (Bankr.D.S.C. 1994) (listing in debtor summary of chapter 12 plan insufficient to constitute informal proof of claim; creditor must take some affirmative action to constitute notice that he has a claim against the estate); and *In re Elleco, Inc.,* 295 B.R. 797, 802 (Bankr.D.S.C.2002) (filing a notice of appearance, participating in § 341 first meeting of creditors, taking Rule 2004 exam of debtor's president, and negotiating settlement of a claim on debtor's behalf did not add up to an informal proof of claim). These cases are persuasive, and the requirements for an informal proof of claim implicitly assume that the creditor has taken some action to assert its claim. SICO's claim will be disallowed as untimely.

Disallowance of SICO's claim in Bowden's chapter 13 case does not resolve this adversary proceeding, for if, as SICO argues, the Agreement created an enforceable trust, debtor's ongoing military retirement and disability pay are not property of the estate, and SICO has a beneficial interest in those payments.

### B. *Trust?*

State law determines whether the Agreement created an express trust. *See In re Stanifer,* 236 B.R. 709, 714 (9th Cir. BAP 1999). The Agreement (¶ 16) makes California law applicable. Washington courts generally give effect to a choice of law clause in a contract as expressing the intent of the parties. *McGill v. Hill,* 31 Wash.App. 542, 547, 644 P.2d 680, 683 (1982). In any event, the law pertaining to the creation of trusts is essentially identical in California and Washington.

The elements of an express trust under California law are (a) a competent trustor, (b) trust intent, (c) trust property, (d) trust purpose, and (e) a beneficiary.

*Keitel v. Heubel,* 103 Cal.App.4th 324, 337, 126 Cal.Rptr.2d 763, 773 (2002). Under Washington law, an express trust is "a fiduciary relationship with respect to property, subjecting the person by whom the title to property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *In re Marriage of Lutz,* 74 Wash.App. 356, 365, 873 P.2d 566, 571 (1994) (citing 1 William F. Fratcher, *Scott on Trusts* § 2.3, at 41 (4th ed.1987)). *See also Restatement (Third) of Trusts* § 2 (2003) (stating essentially the same definition). Both jurisdictions follow the *Restatement. See, e.g., Gonsalves v. Hodgson,* 38 Cal.2d 91, 98, 237 P.2d 656, 660–61 (1951); *Niemann v. Vaughn Cmty. Church,* 118 Wash.App. 824, 77 P.3d 1208, 1213 (2003).

A trust may be created by a declaration by an owner of property that he or she holds that property as trustee for another. Cal. Prob.Code § 15200; *Restatement (Third) of Trusts* § 10 (2003). No particular manner of expression is necessary to manifest the trust intention. *Id.* § 13 cmt. b. However, a trust cannot be created unless there is trust property in existence at the time of the creation of the trust, *id.* § 2 cmt. i, and the property generally must be transferable to make an effective declaration of trust. *Id.* § 40 cmt. d.

SICO argues that Bowden's promises to remit his benefits to SICO (¶¶ 1, 2.1(iii), and 2.2), and have all benefits deposited into the account (¶¶ 2.3 and 10.6), together with the Agreement's acknowledgment that the benefits are not assignable (¶ 14.5), support its contention that the Agreement is a declaration of trust, and not an assignment. According to SICO, because the Agreement states that it is not an assignment, sale, or pledge, it can only be an express trust.

 However, in the words of Gabby Hayes, "Sayin' it don't make it so." [2] Rather, I must look to the substance of the transaction, regardless of the label assigned by the parties. *Shafford v. Otto Sales Co.*, 119 Cal.App.2d 849, 859–60, 260 P.2d 269, 275 (1953) ("[M]ere words and the ingenuity of contractual expression ... cannot be used to prevent a showing of the real nature of the transaction. It is substance and not form that controls[.]"); *General Motors Acceptance Corp. v. Seattle Ass'n of Credit Men,* 190 Wash. 284, 288, 67 P.2d 882, 884 (1937) ("In determining the meaning and intent of the parties, courts look beyond the form and from the evidence determine what the real transaction was." (citations omitted)). It is not clear that the provisions cited by SICO are any more than contractual promises.

Here the purported trust fails because there is no trust res: the rights to military retired pay and veterans' disability benefits are neither entitlements nor vested rights. *Milliken v. Gleason,* 332 F.2d 122, 123 (1st Cir.1964) (veterans' benefits are gratuities and establish no vested rights in the recipients); *McCarty v. McCarty,* 453 U.S. 210, 222, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981) (military retired pay is a personal benefit that may be forfeited). At the time of the putative declaration of trust Bowden had no interest or property right in the future payments, nor could he transfer any right or interest.

The pertinent statute precludes assignment of Bowden's retirement pay. "An enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void." 37 U.S.C. § 701(c). Military retired pay is actually reduced wages, *id.,* which, for public policy reasons, may not

be assigned. *In re Moorhous,* 108 F.3d 51, 55–56 (4th Cir.1997).

Assignment of veterans' disability benefits is even more restricted:

Payments of benefits due or to become due under any law administered by the Secretary shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before *or after* receipt by the beneficiary....

38 U.S.C. § 5301(a)(1) (emphasis added). *See also Nelson v. Heiss,* 271 F.3d 891, 895 (9th Cir.2001) (restriction on assignment of veteran's disability benefits is a spendthrift provision which precludes consent to a taking of future benefits).

Recognizing the policy considerations behind the limitations on assignment of military retired pay, the Supreme Court held in *McCarty* that a state court could not divide military retired pay in a divorce or marriage dissolution. The *McCarty* court concluded that Congress intended military retired pay to be a personal entitlement and "actually reach the beneficiary." 453 U.S. at 226–29, 101 S.Ct. 2728. *See also In re Marriage of Dessauer,* 97 Wash.2d 831, 833–34, 650 P.2d 1099, 1100 (1982).

Congress responded to *McCarty* with the Uniformed Services Former Spouses' Protection Act ("USFSPA"), enacted in 1982. USFSPA permits characterization of military retired pay as community property, and allows a state court to award up to 50 percent of the disposable retired pay

---

**2.** If there is an archive of Roy Rogers television shows, I would appreciate a more precise reference.

to the nonmilitary spouse so long as the couple was married for at least 10 years during qualifying service. 10 U.S.C. § 1408(d)(2).

SICO argues that USFSPA acknowledges that military retired pay is property and thus may constitute a trust res. In support, it cites *Zrubek v. Zrubek*, 149 B.R. 631 (Bankr.D.Mont.1993) (award to wife of share of military retired pay was dischargeable as a property settlement), and the case relied upon by the *Zrubek* court, *In re Teichman*, 774 F.2d 1395 (9th Cir.1985) (unpaid post-petition military retired benefits awarded to former wife in dissolution decree were not dischargeable; under decree, former wife had an ownership interest in her share of the retirement fund, and debtor's obligation to pay over her share as he received it gave rise to a new debt). *Zrubek* involves a state court allocating retired pay within the express parameters of USFSPA, and the decree at issue in *Teichman* predates *McCarty* and USFSPA.

But nothing in USFSPA suggests that Congress intended the narrow exception it created to apply outside the domestic relations context. The statute itself merely grants state courts authority to treat retired pay as property of the member and spouse, but does not transform that pay into property. To the contrary, the statute "does not create any right, title, or interest which can be sold, assigned, transferred, or *otherwise disposed of* (including by inheritance) by a spouse or former spouse...." 10 U.S.C. § 1408(c)(2) (emphasis added).

■■■■■ Unlike other trusts, creation of a trust by declaration does not require a transfer of legal title of the property to the trustee. *Restatement (Third) of Trusts* § 10 cmt. e. Nevertheless, "it is not inappropriate for the declaration of trust to be viewed as a form of 'transfer' from the property owner individually to the property owner in a representative capacity." *Id.* And the creation of a trust, whether by declaration or otherwise, transfers equitable title to the beneficiary. *Estate of Heggstad*, 16 Cal.App.4th 943, 950, 20 Cal. Rptr.2d 433, 436 (1993); *Allen v. Sutter County Bd. of Equalization*, 139 Cal. App.3d 887, 890, 189 Cal.Rptr. 101, 103 (1983).

Thus, while the Agreement may have been an attempt to create a trust, the statutory nature of the payments and restrictions upon Bowden's right to them render the attempt bootless. First, Bowden had no then-existing interest in his future retirement pay or veterans' benefits; second, an effectual declaration of trust would transfer legal title from Bowden as individual to Bowden as trustee, and transfer an equitable interest to SICO, contrary to 37 U.S.C. § 701(c) and 38 U.S.C. § 5301(a)(1).

■■■■■ Although the Agreement is a sophisticated legal document, the product of careful drafting in a transparent attempt to skirt the perimeter of the statutory prohibitions, and not something hatched in the mess by some sergeants or chiefs trying to help out their fellow veterans, it is at most a contract. Bowden's liability for any breach of that contract (assuming it is not void as against public policy) will be discharged if he completes his Chapter 13 plan. § 1328.

## V. CONCLUSION

SICO's claim is disallowed as late-filed, and, accordingly, will not be paid through Bowden's chapter 13 plan.

The Agreement neither created a security interest nor effectively declared a trust in Bowden's future retired pay or veterans' disability benefits. SICO has no claim to debtor's military retirement or disability

benefits that were not deposited into the bank account.

I will grant Bowden's motion for summary judgment, deny SICO's cross-motion, and enter judgment that SICO has no interest in Bowden's retirement pay or his veterans' disability benefits.