IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| JOLYNN REUGH-KOVALSKY, individually and as the former personal representative of the Estate of Wendell Reugh, | ) ) ) ) ) | No. 37664-8-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| THOMAS CULBERTSON and LUKINS & ANNIS, P.S., | ) ) ) | |
| Respondents. | ) ) | |

LAWRENCE-BERREY, J. — Wendell Reugh was a wealthy businessman. The administration of his estate has generated multiple lawsuits.

In this appeal, JoLynn Reugh-Kovalsky, Mr. Reugh's daughter, challenges the trial court's second summary judgment ruling. That ruling resulted in the dismissal of her remaining legal malpractice claims against the lawyer and the firm that represented her father and later his estate. We affirm.

FACTS

K. Wendell Reugh is survived by his three adult children: James R. Reugh, Mark W. Reugh, and appellant JoLynn Reugh-Kovalsky. His estate proceedings have persisted for many years. The instant case concerns the trial court's summary dismissal of Ms. Reugh-Kovalsky's malpractice claims against her father's former attorney, Thomas Culbertson, and the law firm he works for, Lukins & Annis, P.S.[1] The background information and procedural history most relevant to this appeal follow.

*General overview of estate*

Mr. Reugh's wealth consisted of personal assets valued at $32 million, miscellaneous trusts valued around $10 million, and a limited liability company valued at almost $58 million. The bulk of his probate and nonprobate estate went either to his children or to a testamentary trust. According to his estate plan, the testamentary trust would receive around $28 million and each of his three children would receive about $1.9 million upfront and just over $12.5 million seven years later (when the children were permitted to terminate the LLC). This appeal involves the testamentary trust.

---

[1] We refer to respondents collectively as Mr. Culbertson. At times, the context plainly means Mr. Culbertson only.

*Will and testamentary trust*

In January 2011, Mr. Reugh executed his Last Will and Testament (Will). Article III of the Will contained a pour-over clause:

> I give my residuary estate to the Trustee of the K. WENDELL REUGH REVOCABLE LIVING TRUST dated January 4, 2011, *wherein I am the Settlor and the Trustee*, to be held, administered, and distributed in accordance with the provisions of said Trust Agreement as if it had constituted a part thereof on the date of my death.

Clerk's Papers (CP) at 386 (emphasis added). The Will appointed Dominic Zamora and James Simmons as co-personal representatives (PRs), but if either of them were unable or unwilling to serve, they were to nominate three individuals and his three children, by majority vote, would designate one of the said nominees to serve as co-PR.

Contemporaneous with the Will, Mr. Reugh executed his revocable living trust (Trust). The Trust appointed Mr. Zamora and Mr. Simmons to succeed Mr. Reugh as trustee and contained the same process as the Will for nominating and designating a replacement co-trustee.

Article II of the Trust read in part: "The Settlor hereby transfers to the Trustee the sum of One Hundred Dollars ($100.00)." CP at 391. The trust did not receive $100.00, or any funds, before Mr. Reugh's death. Article VI of the Trust provided for several distributions to be made upon Mr. Reugh's death, including distributions to his children.

3

The Trust directed that the remainder of the trust estate pass to a charitable foundation or a charitable donor-advised fund to be created by Mr. Reugh. If no such foundation had been established by the time of Mr. Reugh's death, "said remainder shall be distributed to the Inland Northwest Community Foundation[2] [INWCF], to be held as an endowed donor-advised fund known as the Wendell and MaryAnn Reugh Family Fund." CP at 396. The advisors of that fund were to be Mr. Reugh's three children.

*Mr. Reugh's death and subsequent events*

On March 22, 2015, Mr. Reugh died. He had not yet established a charitable foundation. According to Mr. Culbertson, Mr. Zamora called him two days before Mr. Reugh's death—while Mr. Reugh was doing poorly in the hospital—advising that Mr. Reugh "was contemplating or desiring a private foundation" rather than a donor-advised fund. CP at 517. Mr. Culbertson offered to come to the hospital, but Mr. Zamora said Mr. Reugh was not "'in any condition to do that now.'" CP at 517.

Both Mr. Zamora and Mr. Simmons declined to serve as PR. Mr. Reugh's three children selected Ms. Reugh-Kovalsky and Steven Gill (Mr. Reugh's longtime business partner) to serve as co-PR's.

---

[2] The Inland Northwest Community Foundation is now known as "Innovia." For consistency with the record as a whole, we refer to the foundation as INWCF.

On March 30, 2015, Mr. Culbertson wrote a letter to Ms. Reugh-Kovalsky

confirming her and Mr. Gill's appointment as co-PRs of the estate and co-trustees of the

Trust. The letter read:

> You and Steve [Gill] have retained our firm in your capacity as fiduciaries
> for the estate and Trust and as such fiduciaries you are our clients (in your
> fiduciary capacity) in these proceedings. *We, therefore, do not represent
> any beneficiaries. . . .*
>
> However, if the beneficiaries feel they need legal advice or otherwise need
> legal representation unique to their personal situations, they may wish to
> retain independent counsel to represent their interests.

CP at 1375-76 (emphasis added).

On April 15, 2015, Mr. Culbertson wrote another letter to Ms. Reugh-Kovalsky

and Mr. Gill, which read in part:

> As co-personal representatives of the estate and co-trustees of the Living
> Trust, *your primary responsibilities are to take control of and protect estate
> assets*, pay creditors who properly file their claims, prepare an inventory of
> estate assets, file the appropriate income tax returns and pay income tax, file
> estate tax returns and pay estate tax, *and distribute the assets according to
> the trust's terms*.

CP at 377 (emphasis added).

Ms. Reugh-Kovalsky expressed concern that the Trust did not reflect her father's

intentions because it gave his residuary estate to INWCF rather than a private foundation.

5

She did not assert any personal interest in the $28 million trust. In mid-2015, Ms. Reugh-Kovalsky and Mr. Gill made distributions to most of the named beneficiaries.

In June 2015, Ms. Reugh-Kovalsky and Mr. Gill retained additional counsel—Joseph Delay—to advise them on the charitable aspects of the Trust. A meeting was set up in December 2015 between Mr. Delay, Ms. Reugh-Kovalsky, Mr. Gill, and Ms. Reugh-Kovalsky's siblings to discuss the Trust administration.

On January 8, 2015, Mr. Culbertson wrote a follow-up letter to Ms. Reugh-Kovalsky and Mr. Gill that provided, in part:

> I want to be sure that you are clear on your duties and responsibilities as fiduciaries and on the role Joe Delay and I serve as your attorneys.
>
> In his final days, [Mr. Reugh] apparently made several statements concerning his wishes which were at variance with the terms of his living trust and other testamentary documents. Unfortunately, the law does not attach any enforceable significance to such oral statements. Concerning the Inland Northwest Community Foundation, there are four specific issues which have come to light. . . . Third, [Mr. Reugh]'s wish that he had set up a private foundation to be the residuary beneficiary rather than the Community Foundation. . . .
>
> You have retained Joe Delay to represent you (again, in your fiduciary capacities) to deal with the Community Foundation with regard to matters which concern it. Since the living trust provides that the Community Foundation is the recipient of the residuary, every dollar that does not pass to family and other specific devisees passes to the Community Foundation, so each of the foregoing issues has a direct impact on the Community Foundation. . . .

6

> [*Ms. Reugh-Kovalsky*], *you have an obvious conflict of interest since on the one hand you are one of the specific beneficiaries and on the other hand you are a fiduciary as co-personal representative of [Mr. Reugh]'s estate and co-successor trustee of his living trust.* Conflicts of interest are common and permissible in the context of trusts and estates; it is not the conflict itself which gets people into trouble, but what they do in light of the conflict.
>
> As fiduciaries, there are a number of duties and responsibilities which you owe to all the beneficiaries, but there are two duties which are paramount. *First, you have a duty of impartiality to the beneficiaries; that is, you cannot favor the interests of any beneficiary or group of beneficiaries over the interests of another beneficiary. Second, you have a duty of full disclosure; that is, a duty to keep all the beneficiaries sufficiently informed that they are in a position to protect their best interests. In short, you cannot (consistent with your fiduciary duties) treat* [*INWCF*] *as an adversary, as you might if you had a dispute with another party as to which you owe no fiduciary duties.*

CP at 98-99 (some alterations in original).

On March 2, 2016, Ms. Reugh-Kovalsky and Mr. Gill terminated Mr. Culbertson as their counsel. Among other concerns, Ms. Reugh-Kovalsky believed Mr. Culbertson had a conflict of interest because he was listed as one of 33 attorney advisors on INWCF's website. Ms. Reugh-Kovalsky and Mr. Gill eventually hired Amber Myrick to represent them as co-PRs and co-trustees.

On April 27, 2016, Ms. Reugh-Kovalsky sent an e-mail to Ms. Myrick expressing her confidence that Ms. Myrick could help her fund a family foundation in lieu of the gift

7

to INWCF. Shortly thereafter, Ms. Reugh-Kovalsky's siblings also hired attorneys. On July 7, 2016, her siblings' attorneys wrote to the INWCF threatening litigation.

Ms. Reugh-Kovalsky and her siblings then hired current attorney Mary Schultz. On January 27, 2017, Ms. Schultz sent a letter to INWCF's counsel explaining that Mr. Reugh's Trust was invalid and that Mr. Reugh never intended his residuary estate to pass to INWCF. Ms. Schultz advised INWCF that the beneficiaries intended to claim their father's assets and would proceed accordingly.

*Procedural history: three lawsuits*

*Trust invalidity lawsuit*

On February 27, 2017, Ms. Reugh-Kovalsky and her siblings petitioned the Spokane County Superior Court to declare their father's Trust invalid. They alleged Mr. Reugh failed to create a valid trust in January 2011, pointing to the fact that the Trust had never been funded during his lifetime. After several years of litigation, Judge Anthony Hazel dismissed the trust invalidity action as time barred. Ms. Reugh-Kovalsky and her siblings appealed, and filed contemporaneous with this opinion, we affirmed the trial court's dismissal order. *See In re Estate of Reugh*, No. 37255-3-III (Wash. Ct. App. Dec. 14, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/372553_unp.pdf (*Reugh* II).

*Removal lawsuit*

While the trust invalidity action was pending, INWCF filed a motion to remove Ms. Reugh-Kovalsky and Mr. Gill as co-PRs and co-trustees. The trial court granted the motion and appointed Northwest Trustee & Management Services, LLC to the fiduciary positions. In granting the motion, the trial court noted that Ms. Reugh-Kovalsky's "claim to funds that would otherwise be distributed to INWCF . . . created an irreconcilable conflict of interest." *In re Estate of Reugh*, 10 Wn. App. 2d 20, 41, 447 P.3d 544 (2019) (*Reugh* I). We affirmed the trial court's removal of Ms. Reugh-Kovalsky and Mr. Gill as co-PRs/trustees. *Id.* at 62-68. Our Supreme Court denied review. 194 Wn.2d 1018, 455 P.3d 128 (2020).

*Current malpractice lawsuit*

On March 21, 2018, Ms. Reugh-Kovalsky filed a legal negligence action against Mr. Culbertson. As a former PR, she sought damages caused by Mr. Culbertson's alleged malpractice in the preparation of her father's estate. In her personal capacity, she sought damages based on Mr. Culbertson's allegedly negligent representation of her as PR for the advice that caused her removal and for not timely informing her that the unfunded trust was invalid.

*First partial summary judgment*

On January 31, 2019, Mr. Culbertson moved for partial summary judgment to dismiss claims asserted by Ms. Reugh-Kovalsky in her capacity as former PR. Ms. Reugh-Kovalsky requested that the motion be stayed because Judge Hazel's removal order was on appeal and reversal of that order would permit her to pursue this action.

On March 22, 2019, the trial court heard arguments. The court granted Ms. Reugh-Kovalsky's request for a stay, pending the outcome of *Reugh* I, 10 Wn. App. 2d 20. *Reugh* I was filed on August 20, 2019.

On September 18, 2019, the trial court lifted the stay and granted Mr. Culbertson's motion for partial summary judgment. The court's order read, in part:

> 5.    [Mr. Culbertson] offer[s] three arguments which [he] allege[s] warrant dismissal of claims on behalf of the deceased and his estate (collectively "the Estate"): (1) Ms. Reugh-Kovalsky lacks standing to assert claims on behalf of the Estate; (2) any claim to recover damages are beyond the scope of the survival statute . . . and (3) Wendell Reugh did not suffer any compensable loss.
> 6.    [Mr. Culbertson's] first argument is dispositive of this motion.
>       . . . .
> 8.    Ms. Reugh-Kovalsky lacks standing to bring a claim on behalf of her father or the estate, as she is not the personal representative of the estate. All claims brought by Ms. Reugh-Kovalsky seeking to claim on behalf of her father, Wendell Reugh, or seeking damages allegedly suffered by him, or seeking to recover damages or other relief on behalf of her father's estate are hereby dismissed with prejudice. *Ms. Reugh-Kovalsky's claims alleged against* [*Mr. Culbertson*] *to recover alleged personal*

> *damages to her arising from [his] representation of her as a personal representative or trustee are unaffected by this decision.*
>       9.      The Court does not rule on the other two bases for dismissal offered in the motion because those bases are now moot.

CP at 284 (emphasis added).

### *Second summary judgment*

On January 2, 2020, Mr. Culbertson moved for summary judgment on the remaining malpractice claims. Mr. Culbertson argued that he advised Ms. Reugh-Kovalsky solely in her capacity as a PR, and PRs are fiduciaries who have the duties to defend and follow the terms of the testamentary instruments they administer. Because this was the advice he gave Ms. Reugh-Kovalsky, Mr. Culbertson argued he was entitled to an order terminating the case.

Ms. Reugh-Kovalsky opposed the motion. In support, she filed expert declarations supporting her position that Mr. Culbertson violated the standard of care and breached his fiduciary duty throughout the course of representation.

On January 2, 2020, Ms. Reugh-Kovalsky advised Mr. Culbertson via e-mail that she would move to amend her complaint. On January 27, Ms. Reugh-Kovalsky filed that motion. She argued her request must be considered at summary judgment because it related back to the original complaint and arose in part from Mr. Culbertson's pending summary judgment motion.

11

On January 31, 2020, the trial court heard argument on Mr. Culbertson's second summary judgment motion. Mr. Culbertson reiterated that the only claims remaining were those brought by Ms. Reugh-Kovalsky "as a former PR, alleging negligence to her in her fiduciary capacity as PR. It is not a suit by a beneficiary." Report of Proceedings (RP) (Jan. 31, 2020) at 6.

Ms. Reugh-Kovalsky reiterated her position that her amended complaint—which she acknowledged was not before the court that day—related back to the original complaint; thus, summary dismissal was not appropriate.

Mr. Culbertson explained that many of the facts and issues raised by Ms. Reugh-Kovalsky did not pertain to Mr. Culbertson's representation of her as PR and were therefore not relevant. He framed the case as follows:

> [W]e're looking for guardrails for this case. . . . And there's two paramount legal issues that need resolution so that we can have guardrails in this case. And we can take up all of these other issues if the Complaint gets amended and if it relates back . . . but let's get some guardrails that say the duties of a PR and the advice Ms. [Reugh-]Kovalsky got about the duties of a PR were by the book, and there was no error there as a matter of law.
>
> And the [other] issue of whether the trust was invalid because of a lack of funding is also a dead end because, by law, funding was accomplished here. *If they want to raise other ancillary attacks about the trust as beneficiaries in some other case, then that's for another case or for an amended case but not for this case.*

RP (Jan. 31, 2020) at 37-38 (emphasis added).

The court took the matter under advisement. On April 16, 2020, the court issued a letter ruling advising the parties that it would dismiss Ms. Reugh-Kovalsky's remaining claims.

On May 6, 2020, the trial court entered an order granting Mr. Culbertson's motion for partial summary judgment. The order read, in part:

> [Mr. Culbertson] argued that Ms. [Reugh-]Kovalsky's allegations of negligent legal advice fail as a matter of law because Mr. Culbertson correctly advised her as to the law. [Ms. Reugh-Kovalsky] submitted a declaration from an attorney who disagrees. However, this disagreement as to an interpretation of law . . . does not create a material issue of fact. Courts determine what the law is. This Court agrees that [Mr. Culbertson is] entitled to judgment as a matter of law on [Ms. Reugh-Kovalsky]'s claims that Mr. Culbertson provided incorrect legal advice.

CP at 1213-14.

> Regarding the alleged conflicts of interest, the court ruled:

> It is important to note the scope of [Mr. Culbertson's] representation of Ms. [Reugh-]Kovalsky, which are the only remaining claims. Ms. [Reugh-]Kovalsky's individual claims as a beneficiary have been addressed in other related litigation.
> The undisputed evidence is that [Mr. Culbertson] represented her solely in her capacity as personal representative and trustee and not in her individual capacity or as a beneficiary. Mr. Culbertson clearly advised her as such and referred her to separate counsel. Any alleged malpractice is limited to that scope of representation. As noted above, this Court agrees that the advice relating to that representation was correct. Given the limited scope of the representation and correct legal advice, no damages are attributable to [Mr. Culbertson's] representation of Ms. [Reugh-]Kovalsky in her capacity as personal representative or trustee.

13

CP at 1214. In a handwritten notation following this paragraph, the court noted:

> A prior partial summary judgment entered 9.18.19 disposed of all
> other claims, leaving only claims against [Mr. Culbertson] to recover
> alleged personal damages to [Ms. Reugh-]Kovalsky "arising from [his]
> representation of her as a P.R. or trustee" . . . , which is what this present
> motion [and] order addresses. As noted above, [Ms. Reugh-]Kovalsky's
> claims as an individual beneficiary were not brought in this case, but in a
> separate case, which did not name Lukins or Culbertson as defendants.

CP at 1214. The court did not address the validity of the Trust nor did it rule on

Ms. Reugh-Kovalsky's motion to amend, but succinctly stated: "All claims are

dismissed." CP at 1214.

### *Motion to reconsider*

On May 15, 2020, Ms. Reugh-Kovalsky filed a motion to reconsider/reopen the

court order entered May 6 on grounds of error or law, CR 59(8); entry of a decision

contrary to law, CR 59(7); and substantial justice has not been done, CR 59(9).

Ms. Reugh-Kovalsky presented five arguments. First, the summary judgment

order went beyond the relief requested: Mr. Culbertson sought a limited ruling about

whether the representation was correct as a matter of law, not an outright dismissal of her

amended complaint. Second, the trial court misunderstood the nature of her malpractice

claims, which arose from Mr. Culbertson's conflicts of interest and improper solicitation

of her after her father's death. Third, Mr. Culbertson did not refer Ms. Reugh-Kovalsky

14

to separate counsel to represent her in her capacity as a beneficiary; Attorney Delay was hired to assist her as co-trustee. Fourth, the court erred in ignoring the fact that Mr. Culbertson failed to tell Ms. Reugh-Kovalsky of the statute of limitation for will reformation, even knowing it was her duty as PR to inform the beneficiaries "so that they could protect their own rights." CP at 1222 (emphasis omitted). Finally, Mr. Culbertson should be estopped from asserting contradictory positions within the court. In support of this claim, she points out that years ago, Mr. Culbertson represented Mr. Reugh in reforming his wife's will to comport with her intent.

With her motion, Ms. Reugh-Kovalsky included a declaration from counsel with numerous lengthy exhibits. On May 22, she filed a motion to supplement briefing with additional authority.

Mr. Culbertson opposed reconsideration, arguing that Ms. Reugh-Kovalsky's motion improperly discussed claims raised in her proposed amended complaint that were never accepted. He noted those claims were new because they were asserted on Ms. Reugh-Kovalsky's behalf as beneficiary of Mr. Reugh's estate and should not be a basis to reconsider the existing claims. He further argued the motion to amend was untimely, contrary to the evidence, and disruptive.

The trial court considered the matter without additional oral argument pursuant to CR 59(e)(3). On June 29, 2020, the court denied reconsideration, finding there was insufficient cause shown to alter its decision.

On July 21, 2020, Ms. Reugh-Kovalsky appealed. Designated in her appeal are the May 6, 2020 order granting partial summary judgment and the June 29, 2020 order denying reconsideration.[3]

## ANALYSIS

Ms. Reugh-Kovalsky contends the trial court erred in granting Mr. Culbertson's second summary judgment motion. We discuss the relevant standard of review before addressing her arguments in turn.

We review summary judgment rulings de novo and perform the same inquiry as the trial court. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000). Summary judgment is proper when, after viewing the pleadings, affidavits, and depositions in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

---

[3] Ms. Reugh-Kovalsky notes that the order on reconsideration includes the letter ruling from April 2020 and the first summary judgment order from September 2019. She clarifies in her briefing that she does not appeal the first summary judgment order. Appellant's Reply Br. at 9.

CR 56(c). "'A material fact is one upon which the outcome of the litigation depends in whole or in part.'" *Webb v. Wash. State Univ.*, 15 Wn. App. 2d 505, 515, 475 P.3d 1051 (2020) (quoting *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990)). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all of the evidence and inferences drawn therefrom. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014).

*Scope of relief*

Ms. Reugh-Kovalsky first contends the trial court's ruling went beyond the relief requested in Mr. Culbertson's motion for summary judgment. Specifically, she argues that Mr. Culbertson moved to dismiss the claims arising from allegedly improper advice he gave her as PR, but the trial court erroneously dismissed the claims in her amended complaint. We disagree.

Mr. Culbertson's second summary judgment motion sought to terminate the case. The trial court did just that. During the summary judgment hearing, Mr. Culbertson correctly explained that the remaining issue was whether he provided correct legal advice to Ms. Reugh-Kovalsky in her capacity as a PR. Although Mr. Culbertson implied that additional claims existed when it asked for "guardrails" on the litigation, he explained

17

that guardrails were needed if the trial court granted Ms. Reugh-Kovalsky's motion to

amend. The trial court never granted the motion to amend. We conclude that Mr.

Culbertson's second summary judgment motion sought to dismiss Ms. Reugh-Kovalsky's

remaining claims and the trial court's ruling did not exceed that request.

*Validity of trust*

Ms. Reugh-Kovalsky's remaining claim was that Mr. Culbertson failed to timely

advise her that the trust was invalid for lack of funding. If the trust was declared invalid,

Mr. Reugh would have died partly intestate and the sizable bequest to INWCF would be

distributed to his children.

The creation of trusts is governed by statute.

> A trust may be created by:
> (1)  Transfer of property to another person as trustee during the
> trustor's lifetime or by will or other disposition taking effect upon the
> trustor's death;
> (2)  *Declaration by the owner of property that the owner holds
> identifiable property as trustee*; or
> (3)  Exercise of a power of appointment in favor of a trustee.

RCW 11.98.008 (emphasis added).

This court has interpreted the statute to mean that no separate documentation

transferring property is necessary where a trust is created by the trustor's declaration.

*See In re Estate of Wimberley*, 186 Wn. App. 475, 504, 394 P.3d 11 (2015) ("When the

18

trustor is also the trustee, no formal transfer of assets from the trustor to the Trust is needed."); *see also In re Bowden*, 315 B.R. 903, 909 (Bankr. W.D. Wash. 2004) ("Unlike other trusts, creation of a trust by declaration does not require a transfer of legal title of the property to the trustee.").

Here, the Trust specifically provides: "The Settlor hereby transfers to the Trustee the sum of One Hundred Dollars ($100.00)." CP at 391. The Trust also states that Mr. Reugh is the Trustee. This declaration meets the statutory requirements as interpreted by Washington courts. Accordingly, Ms. Reugh-Kovalsky's argument that the Trust is invalid because it was not funded during Mr. Reugh's lifetime fails as a matter of law.

Moreover, there is an alternative method of funding a trust absent the inter vivos declaration explained above. A testator may gift funds by a pour-over provision in a will to any trustor if: "(1) the trust is identified in the testator's will and (2) its terms are evidenced . . . in a written instrument other than a will, executed by the trustor prior to or concurrently with the execution of the testator's will . . . ." RCW 11.12.250.

Under the statute:

> The existence, size, or character of the corpus of the trust is immaterial to the validity of the gift. Such gift shall not be invalid because the trust is amendable or revocable . . . . Unless the will provides otherwise, the property so given shall not be deemed to be held under a testamentary trust of the testator but shall become a part of the trust to which it is given to be

19

administered and disposed of in accordance with the terms of the instrument
establishing the trust . . . .

*Id.*

Here, all of the statutory requirements are met for a valid pour-over provision to fund the Trust. First, article III of Mr. Reugh's Will specifically references the Trust. Second, the Trust's terms are evidenced in a separate written instrument executed concurrently by Mr. Reugh, the trustor, in January 2011. The statute thus applies and validates Mr. Reugh's gift of his residuary estate to his Trust regardless of whether the Trust contained the existing $100.00 corpus via inter vivos transfer discussed above.

In sum, Ms. Reugh-Kovalsky's challenges to the validity of the Trust are contrary to statute and case law. The Trust was validly created in January 2011 through Mr. Reugh's declaration transferring $100.00. Even if that were not a valid transfer, Mr. Reugh's Will funded the Trust by identifying the Trust, the terms of which are evidenced in a separate and concurrently executed document. Any arguments based on the Trust's alleged invalidity are accordingly devoid of merit.

*Undeveloped assertions and claims outside of duties owed to a client*

Malpractice suits, like negligence actions, present mixed questions of law and fact. *Halvorsen v. Ferguson*, 46 Wn. App. 708, 713, 735 P.2d 675 (1986). The question of whether an attorney errs regarding a legal matter is, of course, a question of law. *Id.*

Because this question is reserved for the court, "'the opinions of expert witnesses on the issue are irrelevant.'" *Id.* (quoting RONALD E. MALLEN & VICTOR B. LEVIT, *Legal Malpractice* § 659, at 821 (2d ed. 1981)).

To prevail in a legal malpractice action, a plaintiff must prove: (1) an attorney-client relationship exists that imposes on the attorney a duty of care to the client, (2) an act or omission by the attorney in breach of the duty, (3) damage to the client, and (4) proximate causation between the breach and the damage. *Schmidt v. Coogan*, 181 Wn.2d 661, 665, 335 P.3d 424 (2014). Experts may be used to determine whether the attorney breached his or her duty. *Walker v. Bangs*, 92 Wn.2d 854, 857-58, 601 P.2d 1279 (1979). Proximate causation includes both cause in fact and legal causation, the latter being determined as a matter of law by a judge. *Ang v. Martin*, 154 Wn.2d 477, 482, 114 P.3d 637 (2005). Legal causation presents the question of whether liability should attach to the lawyer and may be decided as a matter of law only when reasonable minds could reach but one conclusion. *VersusLaw, Inc. v. Stoel Rives, LLP*, 127 Wn. App. 309, 328, 111 P.3d 866 (2005).

Ms. Reugh-Kovalsky argues Mr. Culbertson failed to rebut the "uncontroverted" evidence that Mr. Culbertson committed malpractice. She offered three expert declarations and points to Mr. Culbertson's failure to refute those experts. She

misunderstands the malpractice standards under which her claim operates. As discussed above, whether advice is correct as a matter of law is for a court—not a legal expert—to decide. The trial court stated as much. To the extent that Ms. Reugh-Kovalsky's malpractice claims depend on Mr. Culbertson's allegedly incorrect instruction to treat the Trust as valid, they fail as a matter of law.

Ms. Reugh-Kovalsky also argues that Mr. Culbertson never should have given her PR advice in the first place due to his conflict of interest of also being one of 33 attorney advisors listed on INWCF's website. Whether circumstances create a conflict of interest under the ethical rules is a question of law. *Spencer v. Badgley Mullins Turner*, *LLC*, 6 Wn. App. 2d 762, 800-01, 432 P.3d 821 (2018). We fail to see any conflict of interest in representing a PR (charged with distributing money to a beneficiary) and being one of numerous attorney-advisors for the beneficiary on unrelated matters. A conflict of interest would have arisen if Mr. Culbertson had represented Ms. Reugh-Kovalsky as a beneficiary while also representing INWCF as a beneficiary. But that is not the case here. Mr. Culbertson did not represent Ms. Reugh-Kovalsky as a beneficiary, and INWCF has its own counsel in this matter.

Ms. Reugh-Kovalsky next argues Mr. Culbertson knew the Trust did not reflect Mr. Reugh's true intentions, yet failed to remedy the mistake in time, which was a breach

of his duty. The record does not support her argument. The record shows that Mr.

Reugh, from time to time after the Trust was executed, discussed with Mr. Culbertson

changes to how the residuary might be administered. But the discussions never

materialized into a decision to make a change until he was very ill in the hospital. Even

then, Mr. Culbertson offered to visit Mr. Reugh in the hospital but was told that Mr.

Reugh was too ill.

Ms. Reugh-Kovalsky's argument relies on speculation, not facts. For example, she

points to an earlier version of Mr. Reugh's Will, executed in 2009, which did not leave

his residuary estate to charity and created two trusts for the benefit of his heirs alone.

She also points to an e-mail Mr. Culbertson sent to Mr. Zamora in September 2010,

where Mr. Culbertson wrote:

> [Mr. Reugh] is not, however, committed to a large gift to charity, and at one
> point he asked when the foundation can end and be distributed to his family.
> He is clearly uncomfortable with giving his family too much money, but on
> the other hand he has discomfort with giving his estate to anyone other than
> family.

Appellant's Opening Br., App. A (unredacted version of CP at 493).

The question of whether Mr. Culbertson knew that the 2011 Trust did not reflect

Mr. Reugh's true intentions is factual in nature. "We consider all facts and reasonable

inferences in the light most favorable to the nonmoving party, but the nonmoving party

23

may not rely on speculation." *Specialty Asphalt & Constr. LLC v. Lincoln County*, 191 Wn.2d 182, 191, 421 P.3d 925 (2018). Similarly, "[q]uestions of fact may be determined on summary judgment as a matter of law where reasonable minds could reach but one conclusion." *Swinehart v. City of Spokane*, 145 Wn. App. 836, 844, 187 P.3d 345 (2008).

Ms. Reugh-Kovalsky has not supported her assertion with nonspeculative evidence. That Mr. Reugh's 2009 Will did not leave money to charity does not demonstrate that the validly executed 2011 Will and Trust was contrary to Mr. Reugh's true intentions and it especially does not demonstrate that Mr. Culbertson knew of this alleged fact. Similarly, the 2010 e-mail between Mr. Culbertson and Mr. Zamora does not demonstrate that Mr. Reugh's 2011 Will and Trust were contrary to his intentions or that Mr. Culbertson knew of this alleged fact.

Finally, Ms. Reugh-Kovalsky argues that her claim involves more than a single piece of legal advice, but instead encompasses a pattern of deceitful acts by Mr. Culbertson in the course of representation. Again, the scope of representation is limited to Mr. Culbertson's representation of Ms. Reugh-Kovalsky as a PR. Her arguments are unsupported by the summary judgment record and require a trier of fact to engage in broad speculation. They thus fail to present genuine issues of material fact.

No. 37664-8-III
*Reugh-Kovalsky v. Culbertson*

AMENDED COMPLAINT

Ms. Reugh-Kovalsky contends the trial court erred by dismissing her amended complaint. Mr. Culbertson responds that the trial court never granted her motion to amend so it could not have erred by dismissing it. In her reply brief, Ms. Reugh-Kovalsky argues the trial court erred by not allowing her to file an amended complaint. This argument was not raised in her opening brief, and we will not consider an issue raised for the first time in a reply brief. *In re Marriage of Bernard*, 165 Wn.2d 895, 908, 204 P.3d 907 (2009).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Pennell, C.J.                    Siddoway, J.

25