[No. 13498-1-I.   Division One.   October 6, 1986.]

MARY CATHERINE HALVORSEN, *Appellant,* v. WILLIAM H. FERGUSON, ET AL, *Respondents.*

*Jerry Schumm* and *Buckland & Schumm,* for appellant.

*Frederick M. Meyers* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.,* for respondents.

SWANSON, J.—Mary Catherine Halvorsen, plaintiff below, appeals a summary judgment in favor of William Wessel-hoeft, et al, d/b/a Ferguson & Burdell (referred to collectively as Ferguson), defendants below, and dismissal of her action for legal malpractice. She contends that factual issues remain regarding duty, breach of duty, and proximate cause that should have been submitted to the jury. Halvorsen also assigns error to a judgment on Ferguson's

counterclaim for attorney's fees.

This appeal arose out of a dissolution action (hereinafter referred to as the Halvorsen action). Mary Catherine Halvorsen married Boyer Halvorsen on May 15, 1965. The couple separated in 1976, and in May 1977 the appellant retained the law firm of Ferguson & Burdell to represent her in a separation action. William Wesselhoeft was the primary attorney.

In response to appellant's separation action, her husband brought a counterclaim for dissolution. The Halvorsen action went to trial in December 1977 and January 1978. Although the dissolution trial encompassed numerous property and custody issues, the focus of the instant appeal is the disposition of what was the bulk of the Halvorsen property: two corporations owned by the husband at the time of his marriage to Mary Catherine and two wholly owned subsidiaries of those corporations.

Appellant's husband had been engaged in the towing of logs and the transportation of freight since the 1920's. In the 1950's the business expanded into Southeast Alaska. The Puget Sound portion was incorporated as Halvorsen Towing, Inc., in 1959; the Alaska portion was incorporated on the same date as Boyer Towing, Inc. Mr. Halvorsen was president and a director of each corporation.

In order to obtain an ICC permit, Boyer Towing negotiated the purchase of all outstanding stock of the Olson Tug Boat Company. The purchase was authorized and negotiated prior to the marriage, but was not consummated until after the marriage in 1965. In 1976 all shares of Olson Tug were transferred to Halvorsen Towing. In the 1960's Boyer Towing also developed a barge division, which was incorporated as Boyer Alaska Barge Line, a wholly owned subsidiary, in 1975.

The value of the husband's stock in these corporations increased from approximately $400,000 at the time of the marriage to approximately $2,500,000—$3,350,000 at the time of separation. At trial, various theories were argued to permit the wife to assert a community interest in these

corporations, in particular in the substantial growth in value that occurred after the marriage. The trial court, however, rejected appellant's claim and concluded the husband's stock in Boyer Towing and Halvorsen Towing was his separate property. This decision constitutes the basis of the instant malpractice claim.[1]

Following a dispute with Ferguson & Burdell, appellant employed attorney Philip Malone to appeal the Halvorsen decision. By unpublished opinion filed July 14, 1980, this court affirmed the trial court's decision with only a slight modification. Subsequent petitions for review in the Washington Supreme Court and for mandamus in the United States Supreme Court were denied.

Appellant, acting pro se, commenced an action for breach of contract and legal malpractice against Ferguson & Burdell in 1980. Ferguson counterclaimed for its attorney's fees in the Halvorsen action. The various claims of legal malpractice were ultimately reduced to one: an alleged failure to pursue adequately a community property interest in the husband's corporations.

On June 30, 1983, Superior Court Judge Peterson granted Ferguson's motion for summary judgment. In its oral decision, the trial court indicated that the evidence submitted in opposition to Ferguson's motion failed to raise material factual issues regarding both negligence and proximate cause. In addition, the court, sitting without a jury, entered a judgment on the counterclaim for attorney's fees. Appellant's motion for reconsideration was denied and this appeal ensued.

■ In order to sustain a claim of legal malpractice, the plaintiff must show:

(a) the existence of an attorney–client relationship; (b) the existence of a duty on the part of the lawyer; (c) failure to perform the duty; and (d) the negligence of the lawyer must have been a proximate cause of the damage to the client.

---

[1] Of community and separate assets totaling about $5 million, appellant was eventually awarded approximately $500,000.

*Sherry v. Diercks,* 29 Wn. App. 433, 437, 628 P.2d 1336, *review denied,* 96 Wn.2d 1003 (1981). An attorney has a duty to exercise "that degree of care, skill, diligence and knowledge commonly possessed and exercised by a reasonable, careful and prudent lawyer in the practice of law in this jurisdiction." *Cook, Flanagan & Berst v. Clausing,* 73 Wn.2d 393, 395, 438 P.2d 865 (1968).

We observe initially that both appellant and her expert witnesses have great difficulty in articulating the precise nature of respondent's alleged negligence. The primary thrust of the argument appears to be that Ferguson breached its duty by failing adequately to research and advance appropriate legal theories in the underlying dissolution action, in particular an "apportionment" theory, that would have caused the trial judge to characterize the husband's subsidiary corporations as community property. Had these corporations been so characterized, it is asserted, the appellant would have received a greater property award. Such allegations potentially involve several distinct bases of liability for legal malpractice. *See generally* R. Mallen & V. Levit, *Legal Malpractice* §§ 206–13 (2d ed. 1981).

Because the trial court reached its decision on a motion for summary judgment, we must view the material evidence and all reasonable inferences therefrom in the light most favorable to the appellant. *Klinke v. Famous Recipe Fried Chicken, Inc.,* 94 Wn.2d 255, 256, 616 P.2d 644 (1980). The purpose of a motion for summary judgment is to avoid useless trials when no genuine issue of material fact exists. *Zobrist v. Culp,* 18 Wn. App. 622, 637, 570 P.2d 147 (1977). When material issues of fact exist, they may not be resolved by the trial court and summary judgment is inappropriate. The appellant vigorously contends that because she had three expert witnesses willing to state that Ferguson's actions were negligent and that such negligence proximately caused her damages, the trial court erroneously granted respondent's summary judgment motion.

Although questions of negligence and proximate causation are usually for the jury, the unique characteristics

of a legal malpractice action may render the general rule inapposite in certain instances. As one commentator has observed, some confusion has resulted from a failure to recognize that the issue of professional negligence is usually a mixed question of law and fact:

> If the attorney is charged with an error regarding a legal question there are two issues to be determined. First, did the attorney err? Second, if so, was the error caused by the attorney's negligence? The first issue is one of law; the second is one of fact.
>
> The initial determination, reserved solely for the court, is whether the attorney erred. For example, only a judge can determine whether an affidavit required for an appeal was defective or if the appeal would have been successful. . . .
>
> Since the determination of whether an attorney erred raises a question of law, the opinions of expert witnesses on the issues are irrelevant.

(Footnotes omitted.) R. Mallen & V. Levit § 659, at 820–21; *see also Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255 (1977). Our Supreme Court has recently held that although in most legal malpractice actions the jury is to decide causation, the determination of what decision would have followed if an attorney had timely filed a petition for review "is a question of law for the judge, irrespective of whether the facts are undisputed." *Daugert v. Pappas,* 104 Wn.2d 254, 259, 704 P.2d 600 (1985).[2] In *Daugert,* the court found that the trial court had erred in instructing the jury on the issue of proximate cause.

Appellant's attempts to define the nature of Ferguson's alleged negligence reflect considerable confusion. Appellant and her expert witnesses allege that Ferguson erred by

---

[2]"The rationale . . . is clear. The overall inquiry is whether the client would have been successful if the attorney had timely filed the appeal. The determination of this issue would normally be within the sole province of the jury. Underlying the broad inquiry, however, are questions bearing legal analysis. The determination of whether review would have been granted and whether the client would have received a more favorable judgment depends on an analysis of the law and the Rules of Appellate Procedure. Clearly, a judge is in a much better position to make these determinations." *Daugert,* at 258.

asserting "the" salary theory rather than "the" apportionment theory in an attempt to obtain a community interest in the great increase in value of the husband's corporations. However, "apportionment" is not a single theory, but a spectrum of techniques that courts have adopted to deal with a particular problem: the conflict between the well settled concept that the labor and skills of a spouse during marriage are a community asset and the concept that the rents, issues, profits, and increasing value of separate property remain separate property. *See generally* King, *The Challenge of Apportionment,* 37 Wash. L. Rev. 483 (1962). The problem arises, as it did in the Halvorsen action, as to how to deal with community labor, *i.e.,* the work performed by both Mr. and Mrs. Halvorsen in connection with the corporations that were Mr. Halvorsen's separate property prior to marriage. Courts have utilized various theories and systems to apportion property and increased value in such situations into their community and separate components. These approaches include, among other methods, treating all income and increase in value as separate property, treating any gain as community property, and the "salary" system, in which the community is allowed a reasonable salary as compensation for the labors of one of the spouses on behalf of separate property. *See* King, *supra.* Thus, the "salary" theory is, in fact, one of a variety of apportionment theories that have been adopted by courts. *See* King, *supra* at 487–88. Several of the arguments advanced by Ferguson during the dissolution trial, can appropriately be characterized as "apportionment" theories.

Appellant's allegations of malpractice are supported by the depositions and affidavits of three expert witnesses: John Strait, a law professor at the University of Puget Sound School of Law; Philip Malone, the attorney who argued the Halvorsen action on appeal; and Harry Cross, a University of Washington law professor and an expert on community property law. In sometimes inconsistent pronouncements, these experts opine that Ferguson's action on

behalf of the appellant failed to meet the appropriate standard of care and that such negligence caused the trial court's failure to award the appellant a substantial portion of the value of the husband's corporations.

The depositions and affidavits of the appellant's experts reveal considerable disagreement as to which theories respondents should have urged and which theories were in fact presented. Professor Strait, for example, initially stated that "apportionment" was not argued, but later changed his allegation to one that Ferguson had failed to distinguish adequately apportionment from a general equitable theory and had thereby confused the trial judge. At one point, Strait states that what he refers to as the "characterization" theory is the same as Professor Cross's "apportionment" theory.[3] However, we need not decide what the various experts meant by "apportionment" since all three eventually agreed that the apportionment theory was in fact presented by Ferguson.[4] The ultimate thrust of the criticism was not that Ferguson had failed to apply a

---

[3]Professor Cross, who referred to apportionment as "perhaps an elaboration, a refined application" of the salary theory, defined the theory as follows:

"Q. And apportionment being what?

"A. Well, there are cases, California cases, for instance, that have held that the separate property should have a reasonable return based on a reasonable rate of interest, and all the rest of it is wages.

"Then there is [sic] some California cases in one sense that will go absolutely the other way, . . .

". . .

"So you have an apportionment which moves you beyond the salary calculation as being the only measure and saying salary controls the community side and all the rest is automatically separate. It comes to somewhat of a more complex approach, but it also recognizes the priorities in favor in which the community property is held and none the less adequately compensates the separate property." Clerk's Papers, at 1176.

[4]After reviewing the trial judge's oral opinion in the Halvorsen action, but without examining either the trial transcript or Ferguson's trial briefs, Professor Cross acknowledged that although he found the focus undesirably narrow, the appropriate theories had been presented to the judge. Clerk's Papers, at 1187. Similar comments were made by Professor Strait. Philip Malone found "some evidence" of the apportionment theory in Ferguson's trial brief. Clerk's Papers, at 1107.

settled legal principle to the characterization of the husband's corporations, but rather that Ferguson failed sufficiently *to emphasize* a theory that, all agreed, was not supported by any Washington law. Thus, appellant's claim in reality involves the judgmental and tactical decisions of an attorney in the conduct of litigation.

The trial brief in the Halvorsen action sets forth several alternative theories in asserting a community interest in the corporations. Contrary to appellant's assertions, "the" salary theory as presented in Ferguson's brief was not a single argument but encompassed several alternative approaches. A primary argument was that the husband's salary to the community was so grossly inadequate that it should be ignored by the court. As a consequence, the brief argued, the increased growth of the corporations should be regarded as a commingling of community labors and the inherent natural increase of the value of the separate property element and found to be all community property.[5] Other theories presented involved an award for the deficiency in the husband's salary, a claim for uncompensated services rendered by the wife on behalf of the corporations, and a general equitable claim based on the unique growth in value of the stock during the marriage and the great disparity in the position of the parties. It is unnecessary to comment further on these theories except to note they belie appellant's assertions that Ferguson assumed the increased value of the subsidiary corporations was separate property and failed to assert a community property interest. Ferguson's decision to urge several alternative valuation schemes based on different assumptions and theories was tactically sound.

The trial court in the Halvorsen action rejected the wife's arguments, finding that the salary paid to the husband was reasonable and that the community had been fully and fairly compensated for his services. Of particular signifi-

---

[5] *See, e.g., Hamlin v. Merlino,* 44 Wn.2d 851, 860, 272 P.2d 125 (1954); *In re Estate of Buchanan,* 89 Wash. 172, 154 P. 129 (1916).

cance was the trial court's finding that the substantial growth in the corporations was due primarily to the inherent qualities of the business.[6] Finally, the trial court found that the services rendered to the corporations by the appellant did not significantly contribute to the corporations.

■ In general, mere errors in judgment or in trial tactics do not subject an attorney to liability for legal malpractice. *See Cook, Flanagan & Berst v. Clausing, supra* at 394; *cf. Hansen v. Wightman,* 14 Wn. App. 78, 100–01, 538 P.2d 1238 (1975) (attorney not negligent when he accepts as correct interpretation of the law a decision of the highest court of his state or when he exercises judgment in a matter of doubtful construction). This rule has found virtually universal acceptance when the error involves an uncertain, unsettled, or debatable proposition of law. *See* R. Mallen & V. Levit § 200, at 278 and cases cited therein; *see also Martin v. Burns,* 102 Ariz. 341, 429 P.2d 660 (1967) (summary judgment); *Davis v. Damrell,* 119 Cal. App. 3d 883, 174 Cal. Rptr. 257 (1981) (summary judgment). In the instant case, appellant's experts were in agreement that there were no Washington decisions on "apportionment", regardless of what each expert understood the "apportionment" theory to be. Professor Cross referred to some California cases for support of the theory, but also acknowledged "there is [*sic*] some California cases in one sense that will go absolutely the other way . . ."[7]

---

[6]Although the trial court found that the husband's industry and skills contributed greatly to the success of the corporations, it also found that "[t]he substantial increase in the value of the corporations was due primarily to the inherent qualities of the business, to the fortunately healthy economic climate generated by Alaskan statehood and the discovery of oil in Alaska, to the fact of [the husband] having a well–established business and clientele in the right place at the right time when the economy burgeoned for a time, and to inflation."

[7]*See, e.g., Beam v. Bank of Am.,* 6 Cal. 3d 12, 490 P.2d 257, 98 Cal. Rptr. 137 (1971) (setting forth the "two quite distinct alternative" apportionment approaches developed by the courts in California: (1) allocating a fair return on the separate property investment as separate property and allocating the excess as community property arising from a spouse's labor; and (2) determining the rea-

The unsettled nature of "apportionment" is further underscored by commentators and those Washington decisions that at least touch upon the subject, many of which were cited by Ferguson in the trial brief in the dissolution action. *See, e.g.,* King, *supra.* Moreover, we find that the obvious difficulty encountered by appellant and her experts in explicating the "apportionment" theory and how it should be presented to the trial court is further evidence of the uncertainty in this particular area. *Cf. Collins v. Wanner,* 382 P.2d 105 (Okla. 1963). We therefore conclude as a matter of law that the subject of "apportionment" as framed by the appellant involved an uncertain and unsettled legal proposition. *See Davis v. Damrell,* 174 Cal. Rptr. at 260; R. Mallen & V. Levit § 660. Thus, even were we to assume that Ferguson's judgment in the choice and emphasis of theories presented on behalf of the appellant had been proven erroneous by subsequent court rulings, our decision would remain the same. The statements by experts that they would have conducted litigation in an uncertain and unsettled legal area differently, standing alone, cannot, as a matter of law, constitute the basis for a legal malpractice action. *See Rorrer v. Cooke,* 313 N.C. 338, 329 S.E.2d 355, 367 (1985) (summary judgment).

Nor is there any material factual issue in the instant case as to whether Ferguson's choice of theories was based on the exercise of an informed judgment. An attorney's immunity from judgmental liability is conditioned upon reasonable research undertaken to ascertain relevant legal principles and to make an informed judgment. *Smith v. Lewis,* 13 Cal. 3d 349, 530 P.2d 589, 595, 118 Cal. Rptr. 621 (1975). The trial brief submitted by Ferguson in the Halvorsen action demonstrates awareness of the then existing Washington authorities, which are cited in an appropriate manner. Virtually all of the Washington decisions from which appellant's experts would have woven together their

sonable value of the spouse's services, allocating that amount as community property, and allocating the balance as separate property).

own trial arguments were in fact cited in the brief. *Cf. Aloy v. Mash,* 38 Cal. 3d 413, 696 P.2d 656, 212 Cal. Rptr. 162 (1985) (triable issue of negligence existed when defendant attorney relied on incomplete reading of single case and failed to appreciate vital nature of "matured" pension).

Even if we assume that factual issues remained as to whether Ferguson's choice of theories constituted a breach of the attorney's standard of care, the trial court's decision granting summary judgment was still correct because as a matter of law, under the circumstances of the instant case, there was no proximate cause between such a breach and the appellant's claimed injuries.

In order for an attorney's negligent conduct to constitute legal malpractice, the breach of duty must be a proximate cause of the resulting injury. *Bowman v. John Doe,* 104 Wn.2d 181, 186, 704 P.2d 140 (1985); *Laux v. Woodworth,* 195 Wash. 550, 552, 81 P.2d 531 (1938). General principles of causation are no different in a legal malpractice action than in an ordinary negligence case. *Sherry v. Diercks,* 29 Wn. App. 433, 437, 628 P.2d 1336, *review denied,* 96 Wn.2d 1003 (1981). To recover, the plaintiff must demonstrate that he or she would have prevailed or at least would have achieved a better result had the attorney not been negligent. *Sherry v. Diercks, supra* at 438. Generally,

> when an attorney makes an error during a trial, the causation issue in the subsequent malpractice action is relatively straightforward. The trial court hearing the malpractice claim merely retries, or tries for the first time, the client's cause of action which the client asserts was lost or compromised by the attorney's negligence, and the trier of fact decides whether the client would have fared better but for such mishandling.

*Daugert v. Pappas,* 104 Wn.2d 254, 257, 704 P.2d 600 (1985). The appellant argues that, had Ferguson more vigorously emphasized the new character and scope of the two corporate subsidiaries and urged the proper legal theories, the corporation would have been characterized as community property. We disagree.

Although appellant's experts could not agree on the definition of the apportionment theory, they all agreed on the factual basis necessary to support the theory: that the growth in the husband's corporations was the result of the husband's unique skill and extraordinary efforts made in behalf of the corporations.[8] At oral argument, appellant continued to assume and to insist that the increased value of the corporations was the result of the husband's skill and labors. This critical issue, however, was resolved adversely to the appellant in the dissolution action when the trial court found that the growth in value was due primarily to the inherent qualities of the business and the unique economic conditions at the time.[9] It is undisputed that Ferguson zealously sought to show that the tremendous growth was the result of the combined community labors of the Halvorsens. Philip Malone, who argued the dissolution case on appeal, praised Ferguson's factual presentation at trial, stating that it was done with "a great deal of skill and thoroughness." Thus, appellant's malpractice allegation is premised on a factual posture that, appellant concedes, was

---

[8]Professor Strait, for example, made the following observations:

"The skill and talent of the husband would have to be the primary community asset from which a community property interest could be claimed in the corporate assets . . .

". . . this would have required proof of the increase in value of the corporate assets being caused by the special skills of the husband rather than simply proving the substantial increase in value of the corporate assets and stock, since he [appellant's counsel] had no evidence of commingling of community and separate assets in the corporation. The easiest way to accomplish this would have been to offer proof of the comparable increase or decrease in value of similarly situated corporations involved in the same kind of business during the same time period of the marriage. This testimony would have established that the husband's skill, not the inherent value of the corporate assets and business as of the date of marriage, was responsible for the increase in the corporate assets and stock. Mr. Wesselhoeft neither investigated to find nor offered at trial such proof." Clerk's Papers, at 318–19.

[9]It is in such circumstances that some California "apportionment" decisions have generally allocated the community a reasonable salary and determined the remaining increase in a business's value to be separate property. *See, e.g., In re Estate of Neilson,* 57 Cal. 2d 733, 371 P.2d 745, 22 Cal. Rptr. 1 (1962); *Millington v. Millington,* 259 Cal. App. 2d 896, 67 Cal. Rptr. 128 (1968).

competently presented at trial, but which was resolved adversely to appellant's position. Under these circumstances, relitigation of such factual issues in the context of a subsequent malpractice action is inappropriate.

Malone also stated that the trial court in the dissolution action had before it the evidence of the new business undertaken by the corporate subsidiaries and the dramatic increase in value that occurred during the marriage. Moreover, Malone stated that he was able to argue, on the basis of the trial record, all of the theories on appeal that it is now asserted should have been presented at trial. With one minor exception, the Court of Appeals affirmed the trial court in every respect. Although the court's unpublished opinion makes no specific reference to the apportionment claims, there is no indication that the court failed to consider the merits of all issues raised. Malone advanced the same arguments in his petition for review by the Supreme Court and review was denied. In light of these circumstances, we find that respondents, the moving party in the motion for summary judgment, sustained their burden of showing that there was no genuine issue of material fact regarding the issue of proximate cause. CR 56(c). The burden then shifted to the appellant to demonstrate a genuine issue of material fact. *See Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 302, 616 P.2d 1223 (1980); *Sea Farms, Inc. v. Foster & Marshall Realty, Inc.,* 42 Wn. App. 308, 311, 711 P.2d 1049 (1985).

A nonmoving party attempting to resist a summary judgment may not rely on speculation, argumentative assertions that unresolved factual matters remain, or in having its affidavits considered at their face value, for upon the submission by the moving party of adequate affidavits, the nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and disclose that a genuine issue as to a material fact exists. *Zobrist v. Culp,* 18 Wn. App. 622, 637–38, 570 P.2d 147 (1977). The primary evidence presented by appellant on this topic was Malone's deposition, in which he stated that he would have

expected a "highly favorable result" had Ferguson pursued the "apportionment" theory, and Strait's deposition, in which he stated that, had the apportionment theory been pursued, it would have resulted in a considerable portion of the increased value of the corporations being found to be community property. No one asked the trial judge in the underlying dissolution whether he would have decided differently had any of the theories subsequently urged by the appellant been presented at trial in the form now urged by appellant. *See* R. Mallen & V. Levit, *supra* § 667, at 849 (questioning propriety of opinion testimony by judge). In light of the subsequent history of the dissolution action, the adverse factual findings, and the admitted lack of relevant case authority, even when viewed most favorably for the appellant, such general and unsupported assertions amount to virtual tautologies. Mere conjecture by experts cannot raise a genuine issue of material fact. *See Theonnes v. Hazen,* 37 Wn. App. 644, 649, 681 P.2d 1284 (1984); CR 56(e). The trial court properly granted summary judgment. *See Malloy v. Sullivan,* 415 So. 2d 1059 (Ala. 1982); *Rorrer v. Cooke, supra.*

Appellant's final contention is that the reasonableness of Ferguson's attorney's fees in the Halvorsen action was a factual question that should have gone to the jury. Ferguson's counterclaim, however, was not determined on summary judgment as was the malpractice action, but rather was tried to the court sitting without jury. Findings of fact and conclusions of law were entered in conjunction with the judgment.

Appellant has failed to assign error to any of the findings or conclusions. Unchallenged findings of fact become verities on appeal. *Riley v. Rhay,* 76 Wn.2d 32, 33, 454 P.2d 820, *cert. denied,* 396 U.S. 972 (1969). Failure to assign error to the trial court's conclusions of law precludes consideration on appeal. *Bank of Wash. v. Burgraff,* 38 Wn. App. 492, 500, 687 P.2d 236 (1984). Moreover, the trial court's finding that the total charges for services rendered by Ferguson were reasonable is amply supported by the

record. The trial court did not err.

We reject Ferguson's request that this court impose sanctions on appellant for a frivolous appeal. *See* RAP 18.9.

[A]n appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.

*Millers Cas. Ins. Co. v. Briggs,* 100 Wn.2d 9, 15, 665 P.2d 887 (1983) (quoting *Streater v. White,* 26 Wn. App. 430, 613 P.2d 187 (1980)). Appellant's allegations of malpractice were supported by a law professor, an attorney, and a former law professor and noted authority on community property in Washington. An appeal that is affirmed merely because the arguments are rejected is not frivolous. *Streater,* at 435.

Finally Ferguson's request for "costs on appeal" is denied. Respondents have failed to demonstrate a basis for such an award and have failed to comply fully with RAP 18.1.

Judgment is affirmed.

GROSSE and WEBSTER, JJ., concur.

Reconsideration denied February 3, 1987.

Review denied by Supreme Court March 31, 1987.