IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of | No. 85014-8-I |
| | DIVISION ONE |
| LADA S. MNATSAKANOVA | UNPUBLISHED OPINION |

SMITH, C.J. — Artur Markarov and Lada Mnatsakanova were married for 28 years before Mnatsakanova passed away. Shortly before her death, Mnatsakanova executed an updated will that disinherited Markarov and left her property to Ernest Arutiunov, her caretaker and close friend. Despite the will, the trial court ordered a family support award to Markarov of $838,300, which exhausted Mnatsakanova's estate. On appeal, Arutiunov argues the court erred in failing to reduce Markarov's family support award by the probate property he received, the remaining mortgage on the house, the value of the now-sold personal property, and the money lost by selling the house before probate began. Finding his arguments unpersuasive, we affirm.

FACTS

Lada Mnatsakanova and Artur Markarov married in Russia in 1993. Mnatsakanova immigrated to the United States as an Armenian refugee that same year. Markarov followed in 1998. They bought a house together in Bellevue, Washington, in 2000. Mnatsakanova had no children. Markarov had one child with another woman, both of whom he left in Russia. Ernest Arutiunov,

a close friend of both Mnatsakanova and Markarov, similarly immigrated to the Seattle area and stayed in close contact with the couple.

In March 2021, Mnatsakanova suffered a stroke, which limited her physical ability. Markarov initially refused to take her to the hospital because the couple had no health insurance. He also refused to pay for a caregiver or rehabilitation after her release from the hospital because Mnatsakanova had been the sole wage earner. Instead, Arutiunov stepped in as Mnatsakanova's caregiver and visited her daily. Arutiunov later testified that Mnatsakanova seemed progressively less sociable and sometimes afraid.

In May 2021, Mnatsakanova's aunt called the police, alleging that Markarov had been physically abusing Mnatsakanova. Markarov was arrested and charged with four counts of domestic violence assault in the fourth degree. He pleaded guilty and served 26 days in jail. The court also imposed a no-contact order. Upon his release from jail, Markarov relocated to Oklahoma to live with family, citing the no-contact order as his reason for not returning to Bellevue. Despite the move, Markarov insisted that he intended to remain married to Mnatsakanova.

Also in May 2021, Mnatsakanova executed an updated will, disinheriting Markarov and leaving all of her property to Arutiunov. She then gave an attorney $10,000 to file a marriage dissolution. A few months later, Mnatsakanova passed away because of complications from the stroke. At that time, Mnatsakanova and Markarov were still legally married despite not having been in contact since Markarov's arrest.

Shortly after Mnatsakanova's death, Markarov hired a real estate agent to sell the couple's Bellevue home. The agent listed the home for $740,000 and eventually sold it for $866,000 in September 2021. This price was consistent with two separate appraisals of the property.

In late September 2021, Arutiunov petitioned for the probate of Mnatsakanova's will. After filing the petition, Arutiunov's attorney tried to stop the sale of the Bellevue home but it had already been finalized. A few days later, Markarov signed an affidavit stating there was no will that would affect the sale. Markarov later claimed that he did not have notice of the probate proceedings because Arutiunov's attorney did not mail the copy of the probate petition until October 2021.

After the will was admitted to probate, the trial court appointed Craig Coombs, an experienced probate attorney, as personal representative. Coombs estimated that the final probate value of Mnatsakanova's estate, including the money from the sale of the home, was $273,000. Coombs's estimate of the estate did not include Markarov's share of the community property.

In March 2022, Markarov petitioned for a family support award under chapter 11.54 RCW. Arutiunov filed a response to Markarov's petition as an interested party, challenging Markarov's right to the award. He also filed a will contest under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, claiming he was Mnatsakanova's only heir at law. The parties initially attempted to mediate their dispute but were unsuccessful.

In response to the petition, Coombs stated that Markarov was entitled to the full family support award and that the award would exhaust Mnatsakanova's limited estate. In opposition to the petition, Arutiunov claimed that a family support award was inappropriate because Markarov had listed the house below market value, sold it in a "fire sale" to obtain the proceeds before probate, and committed perjury and fraud by signing the lack of probate affidavit. Arutiunov requested that the court either deny Markarov's petition or reduce the family support award based on the value of the community property, an alleged encumbrance on the house, and the value of the now-sold personal property.

At the hearing on the petition, Arutiunov testified that Mnatsakanova had retained an attorney to file for divorce after Markarov's arrest and therefore, Markarov was not entitled to a family support award as a surviving spouse. He claimed that she had signed a retainer agreement and paid a retainer but that no initiating documents had been filed.

A court commissioner granted Markarov's request for a family support award of $838,300. The commissioner also found that the award would exceed and exhaust Mnatsakanova's estate, thereby rendering the will contestation moot. Arutiunov moved for revision but the superior court affirmed and adopted the commissioner's ruling. Arutiunov appeals.

ANALYSIS

Family Support Award

Arutiunov asserts that the court erred in failing to reduce Markarov's family support award because the award should have been offset by the probate

4

property he received, the remaining mortgage on the house, the value of the now-sold personal property, and the money lost by selling the house before probate began. There was no error.

In general, the standard of review in probate proceedings for decisions based on declarations, affidavits, and written documents is de novo. Estate of Bowers, 132 Wn. App. 334, 339-40, 131 P.3d 916 (2006). However, where, as here, the trial court weighed the evidence, our review is limited to determining whether the court's factual findings are supported by substantial evidence and, if so, whether the findings support the court's conclusions of law. Sunnyside Valley Irrig. Dist. v. Dickie, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002). Substantial evidence is evidence sufficient to persuade a rational, fair-minded person of the asserted premise. Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004).

A surviving spouse may petition the court for a family support award from the property of a decedent. RCW 11.54.010(1). Because the award serves the same purpose as the former homestead award or award in lieu of a homestead, the amount of the award must be the amount of the RCW 6.13.030(2) homestead exception regarding lands, which was $838,800 at the time of Mnatsakanova's death. The award takes priority over all other claims made on the estate and may be made from either the community or separate property of the decedent. RCW 11.54.060(1)-(2).

There are only three situations in which the court may decrease the basic family support award. Estate of Hein, 17 Wn. App. 2d 243, 255, 485 P.3d 953 (2021); RCW 11.54.050. First, the court may reduce the amount of the award if

5

the recipient will receive probate or nonprobate property "by reason of the death of the decedent." RCW 11.54.050(1). Second, the court may reduce the award if the decedent has surviving children who are not the children of the surviving spouse, and the award would limit the amounts otherwise distributable to those children. RCW 11.54.050(2)(a). And third, the court may reduce the award if it would decrease the amount otherwise distributable to any minor children of the decedent. RCW 11.54.050(2)(b). In any of these circumstances, the court has discretion to reduce the family support award but " 'by no more than the value of such other property as is received by reason of the death of the decedent.' " Hein, 17 Wn. App. 2d at 255 (quoting RCW 11.54.50(1)).

Here, Mnatsakanova did not have any children. Therefore, the court could only reduce the amount of the family support award based on any probate or nonprobate property that Markarov was entitled to receive. Arutiunov contends the court made three errors related to this basis for a reduction in the award: (1) that the court erred by not considering Markarov's community property as probate or nonprobate property; (2) that the court erred in not offsetting the value of the probate or nonprobate property by the remaining mortgage on the Bellevue house; and (3) that the court erred in relying on the sale price of the Bellevue house, which was artificially low. Each argument is addressed in turn.

### 1. Community Property as Probate or Nonprobate Property

Arutiunov first asserts that the trial court erred in failing to decrease the family support award by the value of the community property Markarov received through the sale of the house and the personal property he received through

6

probate. Markarov argues that receipt of his own community property is not a permissible basis for reducing the award. Markarov is correct.

Arutiunov asserts that Markarov's share of the money from the sale of the Bellevue home constitutes probate property the court should have removed from the family support award. We disagree. A family support award may only come from the property "of the decedent." RCW 11.54.010. And the award may only be decreased by property gained "by reason of the death of the decedent." RCW 11.54.050. Here, Markarov's share of the community property is separate from Mnatsakanova's separate or community property. And Markarov's community property is not the result of Mnatsakanova's death. Because Markarov and Mnatsakanova purchased the property after they were married, Markarov had a one-half community property interest in the home from the beginning. Markarov's community property share of the Bellevue home is not property derived from the probate of Mnatsakanova's estate.

Arutiunov also argues that the value of Mnatsakanova's personal property constitutes probate property that Markarov received under the residuary clause of Mnatsakanova's will. We disagree. Mnatsakanova removed Markarov from her will altogether, including any property that would pass under a residuary clause. And, as the personal property Mnatsakanova owned at her death was likely acquired during the marriage, it would have been community property. To the extent that Mnatsakanova possessed separate personal property at the time of her death, her updated will makes clear that such property would not pass to Markarov. Markarov held a one half share in all community property, unimpacted

by Mnatsakanova's death. Because half of the property was community property Markarov already held a share in, and none of the rest would have passed to Markarov via Mnatsakanova's will, Markarov did not receive any probate property.

Finally, although Arutiunov does not point to nonprobate assets as reason to decrease the family support award, it is worth noting that Coombs stated he had no knowledge of any nonprobate assets in the estate. Because Markarov did not receive any probate or nonprobate property by reason of Mnatsakanova's death, the court did not err in failing to reduce the family support award.

2. <u>Mortgage on the Real Property</u>

Arutiunov next argues that the court erred in failing to reduce the family support award by the amount of the mortgage on the Bellevue home. Markarov counters that no mortgage on the house exists and, in any event, that a mortgage is not a permissible basis for reducing a family support award. Because there are only three bases by which to decrease a family support award, and an encumbrance on a property is not one of them, we agree with Markarov.

As previously discussed, RCW 11.54.050 allows only three grounds from decreasing a family support award. The statute does not list encumbrances on property as a basis for decreasing the award. RCW 11.54.050. However, if a property is subject to an encumbrance, the value of the property must be decreased by the amount of the encumbrance. RCW 11.54.060(2).

8

Relying on RCW 11.54.060(2), Arutiunov asserts that the value of the house must be decreased by the amount of the outstanding mortgage. This argument is unpersuasive as no outstanding mortgage exists. Here, Markarov paid off the existing mortgage with the proceeds from the sale of the home. Since Markarov sold the house to a cash buyer, no additional encumbrance occurred. Therefore, RCW 11.54.060 does not apply. The court did not err in failing to decrease the family support award based on a paid-off mortgage.

3. "Fire Sale" of the Real Property

Finally, Arutiunov contends that the court erred in failing to reduce the family support award by the difference between the actual sale price and a speculative price had Markarov not conducted a "fire sale" to avoid the probate process. Markarov asserts that the court did not err in giving more weight to his certified appraisal reports than the market assessment Arutiunov presented. We conclude that the court did not err in its valuation of the house.

Under RCW 11.54.040(3)(b), the court has discretion to set the value of the family support award, including considering the impact it would have on provisions made for third parties under the decedent's will.

Here, RCW 11.54.040(3)(b) permitted the court to consider whether Markarov's sale of the property diminished the estate. The court concluded that Markarov sold the home for fair market value and then found that the value of the house was $866,000. This finding is supported by substantial evidence.

Markarov presented two independent certified appraisals of the property: one he commissioned and one Coombes commissioned. Both appraisals were

conducted by certified appraisers, licensed by the Certified Real Estate Appraiser Act, chapter 18.140 RCW. Both appraisals valued the property at approximately $866,000. These appraisals were buttressed by the fact that the property sold for exactly $866,000. In rebuttal, Arutiunov presented a market assessment not performed by a licensed appraiser who estimated the value of the house to be between $1,121,000 to $1,235,000.

After considering the assessments, the court noted that Arutiunov's proffered appraisal was "not entitled to weight in light of the contradictory opinions of the value made by the certified appraisers." It would be a mistake as a matter of law to give the market assessment more weight than the appraisals. Accordingly, Markarov's two appraisals, performed by licensed professionals, provide sufficient evidence to convince a rationally-minded person that the house sold at fair market value.

Also, even if Markarov had sold the house for an amount closer to Arutiunov's estimate, the family support award would still have exhausted Mnatsakanova's estate. Coombs's response to Markarov's initial petition included the calculation using Arutiunov's estimated value. Had the estate sold the house for $1,235,000, Arutiunov's highest estimate, the estate value would have only increased to $496,581. That amount is still well below the $838,300 family support award.

The court did not err in failing to reduce the family support award based on Markarov's speedy sale of the property.

Attorney Fees

Both Arutiunov and Markarov request attorney fees under RCW 11.96A.150. Markarov additionally contends that Arutiunov's appeal was frivolous, inviting a fee award. We decline to award fees.

1. Equitable Fees

RCW 11.96A.150 grants courts the authority to award attorney fees in any action initiated under Title 11 RCW. RCW 11.96A.150(2); Estate of Berry, 189 Wn. App. 368, 379, 358 P.3d 426 (2015). Under RCW 11.96A.150(1), a court may award fees at its discretion, as it deems equitable, considering any and all factors it determines to be relevant and appropriate.

Because we affirm, we do not award fees to Arutiunov. But awarding fees to Markarov is not equitable either. After Markarov pleaded guilty to domestic assault, the court imposed a protection order separating the spouses. The record reflects that Mnatsakanova had no intention of continuing her marriage to Markarov. Mnatsakanova hired an attorney to file divorce papers. She signed a new will, completely disinheriting Markarov and intending for her property to pass to Arutiunov. And yet Markarov received the entirety of Mnatsakanova's estate. Given the amount of money Markarov received through the award and Mnatsakanova's personal property, it would not be equitable to require Arutiunov to pay Markarov's legal fees.

2. Frivolous Appeal

RAP 18.9(a) allows a court to order a party or counsel who files a frivolous appeal to pay compensatory damages or sanctions. Appropriate sanctions

11

include an award of attorney fees and costs.  Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).  "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal."  Kinney, 150 Wn. App. at 195 (quoting Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)).  However, " '[a]n appeal that is affirmed merely because the arguments are rejected is not frivolous.' " Kinney, 150 Wn. App. at 195 (quoting Halvorsen v. Ferguson, 46 Wn. App. 708, 723, 735 P.2d 675 (1986)).

Markarov contends that, as Arutiunov simply reframed his trial court arguments without identifying any errors he claimed the trial court made, the appeal is frivolous.  We find this unpersuasive.  Arutiunov did fail to specifically identify findings of fact he believed to be in error.  But that is not enough to establish there were no debatable issues or that the claim was so devoid of merit that there is no possibility of reversal.  And Arutiunov's position was clear as to how he believed the court erred.  The fact that we reject Arutiunov's arguments is not enough to consider the appeal frivolous.  We decline to award any fees.

We affirm.

_Smith, C.J._

WE CONCUR:

_Díaz, J._

_Dwyer, J._

12