IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parenting and Support of M.A.F., | No. 84786-4-I |
| KATHRYN COX, | DIVISION ONE |
| Appellant, | UNPUBLISHED OPINION |
| and | |
| CHARLES A. FULMER, | |
| Respondent. | |

SMITH, C.J. — Kathryn Cox and Charles Fulmer were in a committed intimate relationship for approximately three years and separated in September 2018. They are parents to six-year-old M.A.F. Following their separation, Cox petitioned for a parenting plan and initiated a complaint to distribute assets and debts under the committed intimate relationship. In October 2018, the court entered a temporary parenting plan with the parties sharing residential placement equally.

In the court's final order on the parenting plan, the court found that Cox had a long-term emotional or physical problem that interfered with her ability to parent. The court then implemented a three-phase plan in which Fulmer would be the parent with whom M.A.F. resided for the majority of the time until Cox underwent 12 months of dialectal behavior therapy. Cox has not submitted any proof of complying with the ordered therapy.

On appeal, Cox contends that the court's findings about her emotional instability and her need for therapy are unsupported by substantial evidence. We disagree and affirm.

FACTS

Kathryn Cox and Edward Fulmer began a committed intimate relationship in mid-2015 and separated in late 2018. Their child, M.A.F. was born in September 2017.

The parties had a tumultuous relationship with both parties alleging intimate partner violence. In September 2018, Cox was arrested for domestic violence assault against Fulmer. Fulmer then sought a protection order which was dismissed for lack of evidence.

In October 2018, Cox petitioned for a parenting plan, child support, and to distribute assets and debts under a committed intimate relationship. The court appointed a guardian ad litem (GAL) and entered a temporary parenting plan. The temporary parenting plan provided that the parties would have joint decision-making over M.A.F.'s education and healthcare. The residential schedule provided that the parents would share residential time with M.A.F. equally. The court also appointed a parenting coordinator to address issues with the placement schedule and conflicts over decision-making authority. At the GAL's recommendation, the parenting coordinator, Dr. Lynn Katz, performed a parenting evaluation, which included a forensic mental health evaluation.

In the months following the imposition of the temporary parenting plan, Cox was involved in at least 10 child protective services (CPS) reports. Cox

contacted CPS directly for some of the reports, while others were the result of mandatory reporters like M.A.F.'s physicians and Cox's regular psychologist. Each report alleged that either Fulmer or his mother posed a serious risk to M.A.F. or Cox. None of the allegations were substantiated or deemed founded by CPS.

During this time, Dr. Katz conducted her parenting evaluation and noted that while Cox was an engaged and enthusiastic parent, she also displayed emotional dysregulation that affected M.A.F. Dr. Katz described Cox's extreme reactions to relatively normal behavior, resulting in the many unfounded CPS reports, and expressed her own concern about Cox influencing those disclosures of abuse. Dr. Katz recommended that reducing Cox's residential time until she had undergone certain therapeutic intervention was in M.A.F.'s best interest.

In November 2019, Cox filed a notice of intent to relocate with M.A.F. Fulmer objected. The court granted Fulmer's motion to temporarily prevent Cox from moving with M.A.F., determining that the court needed to make a final decision about the parenting plan before Cox could petition to relocate. Neither party addressed the relocation issue at trial.

The case proceeded to trial in October 2022. The court heard testimony from both parents, the parenting coordinator, Cox's psychologist, and Cox's current husband. Both Cox and Fulmer testified as to the difficulties in their relationship and their focus on supporting M.A.F. Dr. Katz testified about the parenting evaluation and discussed her recommended therapy in greater detail. She testified that dialectical behavioral therapy (DBT) is a form of therapy that

3

focuses on emotional regulation and distress tolerance. She described the skill-building process of DBT and explained its relevance to her concerns about Cox's emotional dysregulation. She testified that she was not aware of any requirements necessary for beginning the therapy. Dr. Lisa Adriance, Cox's regular psychologist, also testified about DBT. She noted that while she did not engage in a full DBT program, she had worked on building DBT skills with Cox in her regular practice. She also testified about the difficulty finding an available DBT provider during the Covid-19[1] pandemic.

In the final order on the parenting plan, the court found that both parents were primary caregivers and were focused on the best interests of the child. The court also found that Cox had a long-term emotional or physical problem that interfered with her ability to parent. The court then adopted Dr. Katz's three-phase parenting plan, placing M.A.F. with Fulmer until Cox had undergone four months of DBT. Once Cox finished her first therapy requirement, the court would extend her time with M.A.F. If Cox completed 12 months of DBT and could demonstrate that her emotional instability would not affect her parenting, the parents would share equal residential time. Cox appeals.

ANALYSIS

Adoption of Parenting Plan

Cox contends that the court erred in adopting the parenting plan because there was insufficient evidence to establish that Cox's emotional instability

---

[1] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," a severe, highly contagious respiratory illness that quickly spread throughout the world after being discovered in December 2019.

4

interfered with her ability to parent. She also challenges the DBT requirement, asserting that there is insufficient evidence to establish that DBT was the only therapy that would provide the required benefit. We disagree. There is sufficient evidence to support the court's finding regarding the effect of Cox's emotional state on her ability to parent and to support the requirement that she attend DBT therapy.

We review a trial court's ruling on provisions of a parenting plan for manifest abuse of discretion. In re Marriage of Black, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). A trial court abuses its discretion if its decision in manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." Littlefield, 133 Wn.2d at 47.

We review a trial court's findings of fact for substantial evidence, which is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted. In re Marriage of Katare, 175 Wn. 2d 23, 35, 283 P.3d 546 (2012). We do not reweigh evidence or judge witness credibility. In re Marriage of McNaught, 189 Wn. App. 545, 561, 359 P.3d 811 (2015). "Under a manifest abuse of discretion standard, '[t]he trial court's decision will be affirmed unless no reasonable judge would have reached the same conclusion.' " The Parental

Rights to E.D., 195 Wn. App. 673, 685, 381 P.3d 1230 (2016) (alteration in original) (quoting In re Marriage of Landry, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985)).

1. Ability to Parent

Cox asserts that the trial court erred in adopting the parenting plan because there was insufficient evidence to establish that Cox's emotional instability interfered with her parenting ability. This argument is unpersuasive.

The evidence provided by Dr. Katz and the GAL is sufficient to establish that Cox's emotional dysregulation interfered with her ability to parent and directly impacted M.A.F.

In her parenting evaluation, Dr. Katz stated that Cox seemed unable to control her emotions around M.A.F. and that Cox's emotional reactivity was obvious to any observer, including her six-year-old son. Dr. Katz noted that M.A.F. was well aware of his mother's fear of his father. Dr. Katz stated that this awareness resulted in two main areas of concern: first, that Cox's behavior was influencing M.A.F.'s development by making him fearful of his father, and second, that M.A.F. had become "vigilant" about his mother's emotional distress and worried about her safety.

The GAL's report similarly supports the determination that Cox's emotional instability affects her parenting. The GAL listed four primary concerns for M.A.F., each centering on his relationship with Cox:

a. Becoming emotionally distressed and worried about his mother[.]

    b. Becoming fearful of his father due to negative remarks, suspicious thinking, etc., articulated by his mother in [his] presence[.]

    c. [Being] rewarded with attention and affection from his mother when he says something negative about his father, reinforcing disclosure and increasing potential future disclosures of abuse[, and]

    d. Being an extension of his mother will impact his ability to learn how to manage his reactions to stress.

Each concern displays how Cox's emotional dysregulation directly impacts M.A.F.

Dr. Katz's and the GAL's reports establish that Cox struggles with emotional dysregulation and that it directly impacts her ability to parent M.A.F. The reports also constitute substantial evidence supporting the court's finding of fact. The court did not abuse its discretion in adopting the parenting plan.

    2. Therapy Requirement

Cox also contends that there was insufficient evidence to establish that DBT was the appropriate therapy. We are unpersuaded.

Testimony from both Dr. Katz and Dr. Adriance supports the court's finding that DBT therapy is necessary for Cox. Together, the two professionals provide sufficient evidence for a fair-minded person to believe that DBT is the appropriate therapy for Cox.

Dr. Katz specifically recommends that Cox participate in DBT to increase her emotional regulation and distress tolerance skills. She notes that Cox's emotional dysregulation, and the resulting harm to M.A.F., tends to stem from her inability to mitigate her reactions to relatively normal behavior. Dr. Katz also articulated that DBT will help Cox identify when she feels threatened or

overwhelmed and provide coping skills to improve how she handles those feelings. Dr. Katz notes that DBT also serves to develop skills for maintaining interpersonal relationships, such as decreasing blame and the frequency of disparaging statements about Fulmer. And finally, Dr. Katz testified that the therapy would build Cox's skill for more balanced, flexible thinking, increasing her ability to see things from Fulmer's perspective, identify her own role in problematic interactions, and determine when imminent harm is actually present. Decreasing blame and fewer disparaging comments about Fulmer will reduce the risk of M.A.F. being afraid of his father, which will in turn, provide both M.A.F. and Cox with a better idea of when harm is actually present. With less concern about potential harm, Cox will be less likely to put M.A.F. through CPS investigations and M.A.F. will not feel the need to step into a parental role to protect his mother. Dr. Katz's testimony clearly establishes how DBT skill-building will positively impact Cox's relationship with M.A.F.

Dr. Adriance similarly testified that DBT would be an appropriate therapeutic approach for Cox. Dr. Adriance also testified that she and Cox had worked on building some DBT skills in their regular sessions. She also acknowledged that she had encouraged Cox to find a DBT provider.

Given both the parenting evaluation and testimony, there is sufficient evidence in the record to support the court's finding that DBT would be an effective therapy to combat Cox's specific dysregulation.

Dr. Adriance also testified about the differences between DBT and regular psychotherapy. Adriance stated, "[DBT and normal psychotherapy are] two very

different things. DBT is a very manualized, skill based program . . . it teaches skills. . . . So there's a psychoeducational portion to it, and then there are exercises to learn skills to regulate intense emotion. That's a very different thing than psychotherapy." Because DBT is a very different process than traditional psychotherapy, one cannot be traded for the other to achieve the same results. And both Dr. Katz and Dr. Adriance were clear about why DBT would specifically combat Cox's dysregulation. The court had sufficient evidence to determine that DBT was the appropriate therapy to help Cox regulate her behavior and that substituting another form of therapy would fail to achieve the same goal.

Cox points to the struggle of finding a DBT provider during the pandemic as reasoning that the court erred in requiring the therapy. Referencing a letter from Harborview Medical Center, she argues that DBT cannot be compelled by court order and that it was an abuse of discretion to condition her time with her child on her completion of the therapy. But the question at issue is not the accessibility of the program. Rather, the question is whether the court had sufficient evidence to find that DBT was the only therapy that would provide the required benefits. Given the differentiation between DBT and traditional therapy, and the significant testimony as to the benefits that DBT would provide, the court did not err in determining that DBT was the appropriate therapy for Cox.

The court did not abuse its discretion in adopting the parenting plan with the DBT requirement.

Attorney Fees

Fulmer requests attorney fees under RCW 26.09.140 and RAP 18.9.  We decline to award fees.

1.  RCW 26.09.140

RAP 18.1 provides that applicable law may grant a party the right to recover reasonable attorney fees or expenses on review.  RCW 26.09.140 provides that after considering the financial resources of both parties, "upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs."  But if a party fails to file an affidavit of financial resources, we do not consider their request.  Matter of Marriage of Crosetto, 82 Wn. App. 545, 565-66, 918 P.2d 954 (1996);  In re Marriage of Gillespie, 77 Wn. App. 342, 350, 890 P.2d 1083 (1995).

Fulmer asserts that he is struggling financially and that the extensive litigation is harming his ability to support his child.  He has not, however, filed an affidavit of financial need.  Accordingly, we do not consider his request and decline to award fees.

2.  Frivolous Appeal

RAP 18.9(a) allows a court to order a party or counsel who files a frivolous appeal to pay compensatory damages or sanctions.  Appropriate sanctions include an award of attorney fees and costs.  Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009).  " 'An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which

reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal.' " <u>Kinney</u>, 150 Wn. App. at 195 (quoting <u>Lutz Tile, Inc. v. Krech</u>, 136 Wn. App. 899, 906, 151 P.3d 219 (2007)).  However, " '[a]n appeal that is affirmed merely because the arguments are rejected is not frivolous.' " <u>Kinney</u>, 150 Wn. App. at 195 (quoting <u>Halvorsen v. Ferguson</u>, 46 Wn. App. 708, 723, 735 P.2d 675 (1986)).

Fulmer contends that the facts in this matter support finding this appeal frivolous.  He provides no further argument.  We are unpersuaded.  Simply stating that the record suggests the appeal was frivolous is not enough to establish that there were no debatable issues or that the claim was so devoid of merit that there is no possibility of reversal.  The fact that we reject Cox's arguments is not enough to consider the appeal frivolous.

We affirm.

_Smith, C.J._

WE CONCUR:

_Birk, J._          _Mann, J._